OPINION
{¶ 1} Paul D. Brunelle-Apley appeals from a judgment of the Lake County Court of Common Pleas which found him guilty of nine counts of unlawful sexual conduct with a minor and one count of corrupting another with drugs. He also appeals from the court's judgment sentencing him to a prison term of twelve years for these offenses and labeling him a sexual predator. For the following reasons, we affirm.
 {¶ 2} Substantive Facts and Procedural History *Page 2 
 {¶ 3} On September 21, 2007, Mr. Brunelle, twenty-six years old, was indicted on nine counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), felonies of the second degree, and one count of corrupting another with drugs in violation of R.C. 2925.02(A)(4)(a), a felony of the fourth degree. The first two counts of the unlawful sexual conduct with a minor involved a fifteen-year-old girl, J.A., and counts three through nine of the unlawful sexual conduct with a minor involved a fourteen-year-old girl, B.F. Count ten of corrupting another with drugs involved J.A.'s seventeen-year-old sister.
 {¶ 4} On November 8, 2007, Mr. Brunelle's counsel moved for severance of these offenses for trial. The court held a hearing on this motion and denied it. Mr. Brunelle waived a jury trial and the case proceeded to a bench trial on November 27, 2007.[1]
 {¶ 5} The state presented twelve witnesses, including the three victims, their mothers, investigating officers, and a nurse who assisted Mr. Brunelle when he was tested and treated for the sexually transmitted diseases.
 {¶ 6} The Fourteen-Year-Old Victim
 {¶ 7} B.F., the fourteen-year-old victim in counts three to nine, testified that she met Mr. Brunelle in the summer of 2007 through his brother, who was dating her mother at the time. The two men stayed at the trailer in which B.F. and her mother lived in Madison, Lake County, Ohio, for two weeks. B.F. testified she and Mr. Brunelle were *Page 3 
just friends at the beginning and it progressed into a "relationship." She testified she first had sex with him seven times on five occasions. The first three incidents occurred on the same day sometime in July 2007, in her room. He had her perform oral sex on him, and also digitally penetrated her. They then engaged in vaginal intercourse. A week later, they engaged in vaginal intercourse again in her room. A few days afterwards, they again engaged in vaginal intercourse in her trailer's living room. A week later, around the end of July, they engaged in vaginal intercourse in the woods behind the trailer, and again engaged in vaginal intercourse in the woods at the beginning of August. B.F. testified she told Mr. Brunelle she was fourteen when she first met him. She also testified she received a bouquet of flowers and a teddy bear on September 6, 2007, at her school, and she recognized his hand-writing on the card that came with the flowers.
 {¶ 8} On cross-examination, B.F. stated Mr. Brunelle used a condom on the first occasion. She also stated in the second week of August, she stayed at her father's house, and when she returned she found out from Mr. Brunelle that he had sexual intercourse with one of her friends, J.A., while she was away. As a result, B.F. ended her "relationship" with Mr. Brunelle.
 {¶ 9} B.F.'s mother testified that Mr. Brunelle stayed at her trailer for two weeks in the summer of 2007. She testified that when she found out about his age she told him to leave and to stay away from her daughter. A week later, however, he appeared at her trailer with a pair of tennis shoes for B.F. B.F.'s mother slammed the door and called the police, feeling it was odd that a twenty-six-year-old man was pursuing a fourteen-year-old girl. One day B.F. came home from school with a big bouquet of *Page 4 
flowers, which prompted her mother to go to the school to speak with the school principal and the school security officer, Officer Caswell, about her suspicion regarding Mr. Brunelle. The next day Detective Boerner visited her and she filed a police report. She testified that she found out from her daughter then that Mr. Brunelle's relationship with her daughter was more than just a friendship.
 {¶ 10} Officer Caswell testified that he talked to B.F.'s mother on the day Mr. Brunelle delivered the flowers to the school and identified through the police's computer system that Mr. Brunelle was the individual that delivered the flowers. He located Mr. Brunelle the next day in the trailer park where he lived, and advised him to stay away from the family.
 {¶ 11} The Fifteen-Year-Old Victim
 {¶ 12} J.A., the fifteen-year-old victim in counts one and two, testified she and her friend B.F. lived in the same trailer park and she met Mr. Brunelle through B.F. sometime in July of 2007.
 {¶ 13} J.A. testified she and Mr. Brunelle engaged in sexual intercourse on two separate occasions in the summer of 2007. On the first occasion, they were watching the movie "300" at a trailer park where he was staying in Madison. While they were watching the movie, Mr. Brunelle asked her to have sex with him. J.A. testified: "[H]e kept asking me over and over and over again. I said no. Then I was afraid that he was going to hurt me so I said yes." J.A. stated that she was raped when she was younger so "it popped into [her] head that [Mr. Brunelle] might hurt [her] like [she] had been hurt before." *Page 5 
 {¶ 14} J.A. testified they engaged in sexual intercourse on a second occasion in his bedroom while they were watching another movie, a week or two after the first incident. Describing the second incident, J.A. stated: "He did the same thing, by asking me over and over again and that time I felt like a really strong fear coming on from him or coming from me because he kept asking me and it was like he really said it in a really mean way." J.A. testified both incidents occurred after her fifteenth birthday, which was on July 30, 2007, and she told Mr. Brunelle she was fourteen when she first met him.
 {¶ 15} J.A. testified that she experienced sharp pains in her sides as she and her family were leaving for a weekend camping trip on August 24, 2007. Her mother took her to the emergency room two days later, where she was tested for sexually transmitted diseases and the result came out positive. She stated she had had sexual intercourse with two other men a year before.
 {¶ 16} On cross-examination, J.A. stated the first incident of sexual conduct with Mr. Brunelle occurred "sometime in July."
 {¶ 17} J.A.'s mother also testified. She stated she took J.A. to the hospital for a bad stomach ache, where J.A. was tested for Chlamydia and Gonorrhea, and the result came out positive. That evening, she learned from J.A. that she and Mr. Brunelle had a sexual relationship. She went to the police station on the following Friday to fill out a statement regarding J.A.'s relationship with Mr. Brunelle. She testified when she returned home from the police station, Mr. Brunelle showed up in her yard. She described the encounter as follows:
 {¶ 18} "He came walking around the corner of the house, the girls told me that he was out there. I went — I walked out my front door. He had come out around the corner *Page 6 
of the house and he came right out and just said, `I am fucked.' And I'm like, I just, `I don't know what you are talking about. What do you mean "you're fucked?'"
 {¶ 19} "And he just repeated it to himself again. Said he was fucked. And then asked me what he had done that had made me so mad and I just played stupid. Said I didn't know what he was talking about."
 {¶ 20} J.A.'s mother testified Mr. Brunelle had previously come to her for advice because he was interested in dating J.A., but she was interested in another boy. J.A.'s mother told Mr. Brunelle that there should not be any interest there because he was an adult and she was a child and it was not appropriate for him to have a relationship with her.
 {¶ 21} Sergeant Barson testified that he received a dispatch call on September 7, 2007, regarding J.A.s mother's complaint to the police regarding a sexual relationship between Mr. Brunelle and her daughter. He also testified that a few days prior to that he had taken a complaint regarding a flower delivery at Madison High School and that he began to realize it was the same individual who was involved in both complaints.
 {¶ 22} The Seventeen-Year-Old Victim
 {¶ 23} Regarding J.A.'s sister, the seventeen-year-old girl involved in count ten, J.A.'s mother testified that on August 20, 2007, she came home to find Mr. Brunelle and J.A.'s sister sitting in the latter's bedroom. The room smelled of what she recognized as marijuana. She said to J.A.'s sister: "* * * you look stoned. You're acting stoned. * * * Somebody has been smoking marijuana in my house. What is going on?"
 {¶ 24} J.A.'s sister testified that she met Mr. Brunelle through J.A. around the beginning of August. Mr. Brunelle spent time with both her and J.A. at their trailer park *Page 7 
in Madison, Lake County. On August 20, 2007, she was alone with Mr. Brunelle in her room. She was upset and crying about something and he offered her marijuana, saying to her "just smoke some of it. That it would be fine. Life is too short to be depressed all the time." She told him no three times then "just kind of gave in." She testified that "he had some in a bag and some rolled up into a joint and we had smoked the joint." About half an hour later, her mother came home, walked in on them, and caught both of them sitting on her bed high. She testified that she had told Mr. Brunelle she was seventeen on a prior occasion.
 {¶ 25} Admissions by the Defendant
 {¶ 26} Captain Leonbruno, the jail administrator of the Lake County Adult Detention Facility, testified regarding the prison's telephone recording system. Detective Young testified about his job responsibility in retrieving phone calls in the jail's telephone recording system. He authenticated the recording of some telephone calls made by Mr. Brunelle while he was in the prison. He was heard referring to B.F. and J.A. as "two bitches that wanted to sleep with him" in a phone call to his mother
 {¶ 27} Detective Boerner testified that on September 8, 2008, he talked to Mr. Brunelle about the complaints involving both J.A. and B.F. Mr. Brunelle denied any involvement in the complaint involving J.A., but admitted sending the flowers to the school. He also admitted he had smoked marijuana with J.A.'s sister. Mr. Boerner also testified he talked to J.A.'s sister about the complaint involving J.A., and learned that Mr. Brunelle was told by her mother to stay away from their residence because she had caught them smoking marijuana in her bedroom. *Page 8 
 {¶ 28} Detective Boerner testified that he arrested Mr. Brunelle on September 8, 2008, read him the Miranda rights, and transported him to Lake East Hospital for STD testing. While en route to the hospital, Mr. Brunelle admitted to having sex with J.A. and made the admission again at the hospital. The trial transcript reflects the following testimony by Detective Boerner:
 {¶ 29} "A. * * * [T]here were several times during the drive out there that the Defendant, you know, made admissions as to having sex with [J.A.], you know, basically said, `I had sex with her.'
 {¶ 30} "* * * [H]is additional comments to that were, `I didn't do anything to hurt her that hadn't already been done to her.' At this point * * * he also stated that he had sex with [J.A.'s] mother allegedly; that he saw no difference as to her mother, ten years older than him, he didn't see much of a big deal between ten years, plus or minus, age difference between him and [J.A.].
 {¶ 31} "* * *.
 {¶ 32} "Q. Okay. What, if any, admissions did the Defendant make while he was at Lake East Hospital?
 {¶ 33} "A. The Defendant had admitted he slept with a fifteen-year-old girl [and] that's why he was in this predicament. The Defendant again stated that, you know, he had not done anything to these girls that hadn't already been done to them. He didn't liken himself as a sicko or pervert. He didn't see himself as taking their innocence from them. He basically said they were grown up. They weren't, you know, younger girls, you know, ten, nine, you know, younger. He said that he wouldn't be in this predicament basically if he hadn't gotten his dick wet. *Page 9 
 {¶ 34} "Q. Those were the Defendant's words?
 {¶ 35} "A. Those were his exact words."
 {¶ 36} The trial transcript also contains the following testimony of Detective Boerner on cross-examination regarding the circumstances surrounding Mr. Brunelle's admission regarding J.A. while in the detective's patrol car en route to the hospital:
 {¶ 37} "Q. * * * What did he say exactly?
 {¶ 38} "A. That he had sex with [J.A.].
 {¶ 39} "Q. What did he say before that and after that? Is that just kind of [] right there?
 {¶ 40} "A. He is just talking about relationships with girls and how he is not an unattractive male, doesn't have to sleep with juveniles, that girls kind of throw themselves at him, is he really going to turn it down."
 {¶ 41} Detective Boerner also stated that "the only other questions I asked with reference to [J.A.] was how many times and his answer was two."
 {¶ 42} Detective Boerner also testified that Brenda Thompson, a nurse working at the emergency room, also heard certain comments made by Mr. Brunelle.
 {¶ 43} In addition, Detective Boerner stated that during the procedure for the STD tests, he observed scarring and tissue damage in Mr. Brunelle's genital, giving it an abnormal appearance.
 {¶ 44} Nurse Thompson, a nurse from Lake East Hospital System, testified that on September 8, 2007, she treated Mr. Brunelle when he came into to the emergency room with a detective to be tested for STDs. While she was in the room momentarily *Page 10 
with Mr. Brunelle, he made a comment stating: "This is what I get when I sleep with a 15 year old girl."
 {¶ 45} Deputy Shadeowen from the Lake County Sheriff's Office testified that he transported Mr. Brunelle from the jail to the courthouse for the court procedure involving his waiver of jury trial, and Mr. Brunelle made a comment that "It is like they are trying to * * * charge me with every time I stuck my dick in her."
 {¶ 46} The defense did not present any evidence. At the close of the trial, Mr. Brunelle's counsel moved for a dismissal pursuant to Crim. R. 29(A), which the court denied. The court found him guilty of all ten counts. On December 4, 2007, it entered a judgment convicting him of these counts and referred the matter for a pre-sentence report and a HB 180 evaluation.
 {¶ 47} On December 31, 2007, the court held a sexual predator and sentencing hearing. The court found Mr. Brunelle to be a sexual predator and sentenced him to five years in prison each for count one and count two, to be served concurrently, six years on each count of counts three through nine, to be served concurrently to each other but consecutive to counts one and two, and one year on count ten, to be served consecutive to the other counts. HIs prison term totals twelve years.
 {¶ 48} Mr. Brunelle now appeals, raising four assignments of error for our review.
 {¶ 49} "[1.] The trial court erred to the prejudice of Defendant-Appellant when it convicted Defendant-Appellant of Ten Counts based upon insufficient evidence and said decision was against the manifest weight of the evidence. *Page 11 
 {¶ 50} "[2.] Defendant-Appellant was provided ineffective assistance of counsel at the trial below because counsel failed to renew Defendant-Appellants' Motion for Severance of the offenses subsequent to close of the prosecutor's case.
 {¶ 51} "[3.] The Court below errored [sic] when it sentenced Defendant-Appellant unreasonably because said decision was based upon a mistake of fact.
 {¶ 52} "[4.] The Court below errored [sic] to the prejudice of Defendant-Appellant when it labeled him as a sexual predator because said decision was based upon a mistake of fact."
 {¶ 53} In his first assignment of error, although Mr. Brunelle references sufficiency and manifest weight claims with regard to all ten counts, a reading of the arguments under this assignment of error indicates he raises the following specific claims: (1) his conviction of count one was based on insufficient evidence, and (2) his convictions of all ten counts were against the manifest weight of the evidence. We address these two claims in turn.
 {¶ 54} Sufficiency Challenge Regarding Count One
 {¶ 55} "[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,273. "[T]he relevant inquiry does not involve how the appellate court might interpret the evidence. Rather, the question is, after viewing the evidence in a light most favorable to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." Id. *Page 12 
 {¶ 56} The standard in a sufficiency of the evidence challenge is: viewing the evidence in a light most favorable to the prosecution, a reviewing court should not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proved beyond a reasonable doubt. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862 at *14, citing State v. Eley (1978),56 Ohio St. 2d 169, syllabus.
 {¶ 57} Mr. Brunelle was convicted of counts one through nine of the offense of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A), which provides:
 {¶ 58} "(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard."
 {¶ 59} Count one related to his sexual conduct with fifteen-year-old J.A. sometime between July 1, 2007 and August 31, 2007. Our review of the trial transcript shows the state presented testimony going to all the essential elements of the crime, namely, that Mr. Brunelle, while older than eighteen and not married to J.A., engaged in sexual conduct with her on two separate occasions knowing she was younger than sixteen years of age. Therefore, viewing the testimony in a light most favorable to the prosecution, we find there is substantial evidence upon which the trier of fact could reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt.
 {¶ 60} In arguing that the state failed to present sufficient evidence to sustain his conviction on count one, Mr. Brunelle points to a certain inconsistency in the evidence *Page 13 
regarding when the first sexual conduct with J.A. occurred. J.A. testified on direct examination that both incidents of sexual conduct with Mr. Brunelle occurred after her birthday, which was on July 30th; on cross-examination, however, she stated the first incident occurred "sometime in July." Mr. Brunelle argues the latter statement would also contradict B.F.'s testimony that Mr. Brunelle told her he engaged in sexual conduct with J.A. while B.F. was away at her father's house, which, Mr. Brunelle argues, would place the first incident of sexual conduct with J.A. in August.
 {¶ 61} Mr. Brunelle has confused inconsistent testimony with insufficient evidence. "A sufficiency claim questions whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented." Schlee at *13. His claim of inconsistent testimony challenges the credibility of the evidence rather than the sufficiency of the evidence. As such, his claim that his conviction of count one was based on insufficient evidence is without merit.
 {¶ 62} Manifest Weight Challenge
 {¶ 63} In his first assignment of error, Mr. Brunelle also contends that his conviction of count one and count two, relating to J.A., and counts three through nine, relating to B.F., were against the manifest weight of the evidence.
 {¶ 64} "Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue. `The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new *Page 14 
trial ordered.'" State v. Higgins, 11th Dist. No. 2005-L-215,2006-Ohio-5372, ¶ 35, citing State v. Thompkins, 78 Ohio St.3d 380, 387.
 {¶ 65} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Fritts, 11th Dist. No. 2003-L-026, 2004-Ohio-3690, ¶ 23, citing State v. Martin (1983),20 Ohio App.3d 172, 175. The reviewing court must defer to the actual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it.State v. Thomas, 11th Dist. No. 2004-L-176, 2005-Ohio-6570, at ¶ 29.
 {¶ 66} Counts One and Two
 {¶ 67} Regarding count one and count two, which relates to fifteen-year-old J.A., Mr. Brunelle argues J.A. made no effort to seek assistance after the first incident, willingly returned to his bedroom on a subsequent occasion, and she claimed that she was victimized only to escape the embarrassment. He argues that the state failed to present medical testimony to show that it was possible for J.A. to develop symptoms of STDs in only one or two weeks after exposure to the diseases. He also argues J.A.'s testimony regarding the dates when the offenses occurred was inconsistent.
 {¶ 68} The record contains testimony by J.A. that Mr. Brunelle engaged in sexual conduct with her on two separate occasions in the summer of 2007. J.A.'s testimony is corroborated by Detective Boerner's testimony that Mr. Brunelle admitted he engaged in sexual conduct with J.A. while he transported Mr. Brunelle to the hospital, and that Mr. *Page 15 
Brunelle admitted it again in the emergency room in the presence of Nurse Thompson, who testified that Mr. Brunelle, while waiting be tested for STDs, commented: "This is what I get when I sleep with a 15-year-old."
 {¶ 69} As to Mr. Brunelle's claim that the state failed to present medical testimony as to the time frame for the development of symptoms of STDs, we note that the state only presented the evidence as circumstantial evidence, not as direct proof, of Mr. Brunelle's guilt of his offenses relating to J.A., and therefore, expert medical testimony is not necessary.
 {¶ 70} As to J.A.'s potentially inconsistent statements regarding the time of the first incident, the trial transcript reflects she testified on direct examination that both instances of sexual conduct occurred after her birthday, July 30th, but stated on cross-examination the first instance occurred sometime in July. We note, however, inconsistent testimony goes to the credibility of the witnesses and the weight of the evidence, and, as a reviewing court, we defer to the trier of fact as to such matters. DeHass, paragraph one of the syllabus.
 {¶ 71} Therefore, reviewing the evidence in its entirety relating to count one and count two with deference to the trier of fact as to the credibility of the witnesses and the weight to be given the evidence, we cannot say the trier of fact, which in this case was the trial judge, lost its way and created such a manifest of justice in convicting Mr. Brunelle's of two counts of unlawful sexual conduct with a minor involving J.A.
 {¶ 72} Count Three through Count Nine
 {¶ 73} Regarding counts three through nine, which relate to fourteen-year-old B.F., Mr. Brunelle claims his convictions of these offenses were against the manifest *Page 16 
weight of the evidence. He refers us to B.F.'s negative test result for STDs, which he argues contradicts B.F.'s testimony that he engaged in unprotected sexual intercourse with her on four occasions. He also points to B.F.'s testimony that she did not notice the unusual appearance of his genitalia, when she also testified that she engaged in fellatio with him during the day light hours, which he argues should have provided her with ample opportunity to view his genitalia. He also points out that B.F. wavered in explaining why she could not identify the abnormal appearance of his genitals. He argues her accusation against him is nothing more than "childish jealousy" of his relationship with J.A.
 {¶ 74} Our review of the record reflects B.F.'s testimony that she engaged in seven instances of sexual conduct with Mr. Brunelle on five separate occasions. The first two occasions occurred in her bedroom. On the first occasion, sometime in July 2007, she performed oral sex on him, he digitally penetrated her, and they also had vaginal intercourse. A week later, they engaged in vaginal intercourse. A few days after that, they engaged in vaginal intercourse again, this time in her trailer's living room. A week later, near the end of July, they engaged in vaginal intercourse in the woods behind the trailer, and again at the beginning of August, also in the woods.
 {¶ 75} Mr. Brunelle attempted to rebut the state's evidence by soliciting testimony from Detective Boerner to show that when asked to describe Mr. Brunelle's genitalia, B.F. did not note its unusual appearance. This rebuttal evidence hinges on the ability of fourteen-year-old B.F.'s ability to observe Mr. Brunelle's genitalia and compare it to the appearance of typical male genitalia. The trier of fact apparently did not give too much weight to this evidence. *Page 17 
 {¶ 76} As to the fact that Mr. Brunelle and J.A. tested positive for the STDs in September 2007, and August 2007, respectively, but B.F. tested negative, we simply point out this evidence is not necessarily inconsistent with Mr. Brunelle's engagement in sexual conduct with B.F. between July 1, 2007 and August 31, 2007. The trier of fact could have determined that he contracted the STD's after he ceased sexual conduct with B.F., the last incident of which occurred around the beginning of August according to B.F.'s testimony, which, coupled with individuals' variation in their susceptibility to the diseases after exposure, could explain why B.F. did not contract the STDs. We defer to the trier of fact for its assessment of B.F.'s credibility and weighing of this rebuttal evidence.
 {¶ 77} After viewing the record as it pertains to counts three through nine, we cannot say that the trier of fact clearly lost its way and created such a manifest weight in convicting Mr. Brunelle of these counts.
 {¶ 78} Count Ten
 {¶ 79} Mr. Brunelle's conviction of count ten is based on his violation of R.C. 2925.02(A)(4)(a), which provides, in pertinent part, "No person shall knowingly * * * furnish or administer a controlled substance to a juvenile who is at least two years the offender's junior, when the offender knows the age of the juvenile or is reckless in that regard."
 {¶ 80} The trial transcript reflects that J.A.'s seventeen-year-old sister, testified that on August 20, 2007, she was alone with Mr. Brunelle in her room. Because she was upset and crying about something, he offered her marijuana to smoke. She *Page 18 
testified she declined it three times but then gave in, and her mother walked in on them about half an hour later. She testified that she had told him that she was seventeen.
 {¶ 81} J.A.'s sister's testimony is corroborated by her mother, who testified that on August 20, 2007, she came home to find Mr. Brunelle and J.A.'s sister sitting in her bedroom, which smelled of marijuana, and J.A.'s sister looked and acted "stoned."
 {¶ 82} Mr. Brunelle refers us to the following testimony by J.A.'s mother on cross-examination, contending her testimony that they smoked the marijuana outside was inconsistent with J.A.'s sister's testimony that they smoked in her room:
 {¶ 83} "Q. * * * Mr. Brunelle never came out and said he gave her the marijuana, did he?
 {¶ 84} "A. I believe at one time [J.A.'s sister] and Paul both said that they had smoked it outside during the conversation.
 {¶ 85} "Q. Okay.
 {¶ 86} "A. That it wasn't actually smoked in my house.
 {¶ 87} "Q. Okay. But you smelled this in your house though; right?
 {¶ 88} "A. Yes.
 {¶ 89} "Q. So you know they — now, are you saying both of them said they smoked it outside of the house?
 {¶ 90} "A. Yes.
 {¶ 91} "Q. And when you went — you are claiming you smelled it inside of the home?
 {¶ 92} "A. Yes. *Page 19 
 {¶ 93} "Q. But I guess, my earlier question was, Paul never admitted to you that he gave her the marijuana; did he?
 {¶ 94} "A. They said they had smoked it outside my house."
 {¶ 95} The testimony by J.A.'s mother establishes that she arrived at her home to find Mr. Brunelle and J.A.'s sister alone in her room with Mr. Brunelle, the room smelling of marijuana, and J.A.'s sister appearing "stoned." Her testimony that she was told by her daughter that she and Mr. Brunelle had smoked outside the house potentially affects J.A.'s sister's credibility as the latter testified that she and Mr. Brunelle smoked in her room. The trier of fact, however, was in a much better position to evaluate J.A.'s sister's credibility, and we defer to it. See, e.g., State v. Miller (Sept. 2, 1993), 8th Dist. No. 63431, 1993 Ohio App. LEXIS 4240, at *5-6 (in assessing the witnesses' credibility, the jury, as the trier-of-fact, had the opportunity to observe the witnesses' demeanor, body language, and voice inflections). As the record also contains Detective Boerner's testimony that Mr. Brunelle admitted to him that he had smoked marijuana with J.A.'s sister, we conclude the trier of fact did not lose its way and create such a manifest miscarriage of justice in convicting Mr. Brunelle of corrupting another with drugs for the incident relating to J.A.'s seventeen-year-old sister.
 {¶ 96} Ineffective Assistance of Counsel
 {¶ 97} Mr. Brunelle complains the performance of his trial counsel was defective because he failed to renew the motion for severance at the close of the state's case.
 {¶ 98} To establish his claim that his counsel provided ineffective assistance, Mr. Brunelle must demonstrate (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's *Page 20 
errors, the result of the trial would have been different.Strickland v. Washington (1984), 466 U.S. 668.
 {¶ 99} A threshold issue in a claim of ineffective assistance of counsel is whether there was actual error on the part of appellant's trial counsel. State v. McCaleb, 11th Dist. No. 2002-L-157,2004-Ohio-5940, at ¶ 92. In Ohio, every properly licensed attorney is presumed to be competent and therefore a defendant bears the burden of proof. State v. Smith (1985), 17 Ohio St.3d 98, 100. To overcome this presumption, a defendant must demonstrate that "the actions of his attorney did not fall within a range of reasonable assistance." SeeState v. Henderson, 11th Dist. No. 2001-T-0047, 2002-Ohio-6715, at ¶ 14. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. State v. Iacona (2001), 93 Ohio St.3d 83,105.
 {¶ 100} Here, the record reflects that prior to trial, on November 8, 2007, Mr. Brunelle filed a motion for severances of counts one and two from counts three through nine, and from count ten. On November 19, he filed an additional motion for severance. The trial court held a hearing on November 20, 2007, on the motion, and denied it in judgment entry on November 21, 2007. The court found that some evidence relating to Mr. Brunelle's sexual conduct with B.F. in counts three through nine would be admissible in the trial on counts one and two. The court also found the evidence in this case for the offenses relating to each victim is simple and distinct. Therefore, the court concluded severance was not warranted in this case. *Page 21 
 {¶ 101} We fail to see how Mr. Brunelle's counsel's performance fell below an objective standard of reasonable representation. His counsel filed a motion to sever the offenses, attaching a brief setting forth the arguments for severance, and also made arguments at the hearing conducted by the trial court on the motion. The trial court denied the motion after hearing arguments presented by his counsel and by the state, and issued a decision providing its reasons for the denial. Were Mr. Brunelle's counsel to renew the motion at the conclusion of the state's case, the court would have denied it, because it had already considered the merits of the motion prior to trial and had found severance to be unwarranted in this case. The state of the case had not appreciably changed between that ruling and the trial, and therefore a renewed motion for severance at the end of the state's case would have been futile. "Failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial." State v. Henderson, 8th Dist. No. 88185, 2007-Ohio-2372, at ¶ 42.
 {¶ 102} We further note Mr. Brunelle could not have been prejudiced by his counsel's failure to renew his motion for severance, because the trial court properly denied Mr. Brunelle's motion, for the following reasons:
 {¶ 103} The Joinder Issue
 {¶ 104} "Pursuant to Crim. R. 8(A), `two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offense charged, whether felonies or misdemeanors or both, are of the same or similar character * * *.' Generally, joinder of offenses is liberally permitted in order to conserve judicial resources, prevent incongruous results in successive trials, or to diminish *Page 22 
inconvenience to witnesses." State v. Quinones, 11th Dist. No. 2003-L-015, 2005-Ohio-6576, ¶ 35, citing State v. Torres (1981),66 Ohio St.2d 340, 343.
 {¶ 105} The law generally favors joinder of multiple offenses in a single trial. See State v. Franklin (1991), 62 Ohio St.3d 118, 122.
 {¶ 106} Pursuant to Crim. R. 14, it may be necessary to separate trials to prevent prejudice. See State v. Brinkley, 105 Ohio St.3d 231,2005-Ohio-1507, ¶ 29. Crim. R. 14, provides, in relevant part: "If it appears that a defendant * * * is prejudiced by a joinder of offenses * * * for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts * * *."
 {¶ 107} "When a defendant claims that joinder is improper, he must affirmatively show that his rights have been prejudiced." Crim. R. 14;Quinones at ¶ 38; State v. Roberts (1980), 62 Ohio St.2d 170, 175. "The accused must provide the trial court with sufficient information demonstrating that he would be deprived of the right to a fair trial if joinder is permitted." State v. Lott (1990), 51 Ohio St.3d 160, 163. "The state may negate the defendant's claim of prejudice by demonstrating either of the following: (1) that the evidence to be introduced relative to one offense would be admissible in the trial on the other, severed offense, pursuant to Evid. R. 404(B); or (2) that, regardless of the admissibility of such evidence, the evidence relating to each charge is simple and direct." Quinones at ¶ 39, citing State v.Franklin (1992), 62 Ohio St.3d 118, 122. "The former is generally referred to as the `other acts test,' while the latter is known as the `joinder test.'" Quinones at ¶ 39, citing Lott at 163.
 {¶ 108} "`The standard for granting or denying separate trial is an abuse of discretion' which should be so exercised as to prevent injustice and secure the applicant *Page 23 
of his right to a fair trial." State v. Bowens (Aug. 9, 1998), 11th Dist. No. 97-A-0004, 1998 Ohio App. LEXIS 2913, *26, citing State v.Perod (1968), 15 Ohio App. 2d 115. See, also, State v. Dingus (1970),26 Ohio App. 2d 131. Abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. See State v. Cline, 11th Dist. No. 2007-T-0052, 2008-Ohio-1500, ¶ 35.
 {¶ 109} Here, despite Mr. Brunelle's claim that he was prejudiced by the joinder of the offenses relating to J.A. and those relating to B.F., a review of the record reflects that the evidence to be introduced relative to the former offenses would be admissible in the trial on the latter, severed offenses. B.F. testified that she stopped engaging in sexual conduct with Mr. Brunelle when she found out from him that while she was away at her father's house he had a sexual relationship with J.A. . This testimony would be admissible at trial for Mr. Brunelle's offenses relating to J.A., warranting a joinder of the two trials.
 {¶ 110} Joinder is also proper because the evidence presented by the state relating to each charge is simple and direct. B.F. testified that she engaged in sexual conduct with Mr. Brunelle seven times. The first five incidents occurred in her bedroom and the last two in the woods outside her trailer. J.A. testified that she engaged in sexual conduct with Mr. Brunelle in his room at the trailer in which he was staying while they were watching movies. Thus, our review of the evidence shows Mr. Brunelle's offenses relating to the victims are not intermingled but rather simple and direct.
 {¶ 111} This case is distinguishable from Quinones, supra, where the two victims were the defendant's nine-year-old granddaughter and his ex-girlfriend's eight-year-old *Page 24 
daughter. In that case, each victim related that the incident occurred in the living room while she sat with defendant on the couch watching television and defendant inappropriately touched her private part. This court concluded that the evidence there was not simple and direct. We reasoned: "Both victims were young females. Both children allege that Quinones inappropriately touched them on their `private parts.' Both children described an incident that took place on a couch, while watching television or a movie. The jury could readily confuse the evidence regarding [the eight-year-old's] allegations with the evidence suggesting Quinones inappropriately touched [the nine-year-old]." Id. at ¶ 49. We also pointed out that the presentation of the witnesses during trial further mingled the evidence: the prosecutor constantly switched attention between the two victims' allegations against the defendant, which created an extremely difficult task for a jury to keep the allegations separate when rendering the verdicts. In contrast, in the instant case, both B.F. and J.A. testified at trial as to the occasions where they engaged in sexual conduct with Mr. Brunelle. Unlike inQuinones, the proof for the separate charges against Mr. Brunelle involving the two victims is easily segregated here.
 {¶ 112} Mr. Brunelle argues that certain remarks by the trial court shows that the court, as the trier of fact in this case, was confused about some facts surrounding the two sets of offenses. He refers us to the following exchange at his sentencing hearing, which occurred when Mr. Brunelle addressed the court prior to his sentencing.
 {¶ 113} "DEFENDANT: * * * I stand before you not as a rapist or sick deviant, but someone who was found guilty of consensual sex with somebody under the age of 18 who happened to be my girlfriend of all people. *Page 25 
 {¶ 114} "* * *.
 {¶ 115} "* * * I stand before you a potential sexual predator for having consensual sex with my girlfriend. * * *
 {¶ 116} "* * * If anyone was hurt by the idea of me and my girlfriend having consensual sex with each other, I apologize to you. * * *.
 {¶ 117} "THE COURT: Which one was your girlfriend? Both of them?
 {¶ 118} "THE DEFENDANT: (Nodding affirmatively.)
 {¶ 119} "THE COURT: The same day you had sex with both of them. Both your girlfriends that day?
 {¶ 120} "THE DEFENDANT: I don't know what to say because I am trying to appeal this. * * *.
 {¶ 121} "* * *.
 {¶ 122} "THE COURT: That's fair enough."
 {¶ 123} The above remark made by the court at the sentencing hearing does not affirmatively demonstrate the court was confused when it found Mr. Brunelle guilty of the offenses against J.A. and B.F. This exchange occurred when Mr. Brunelle pled the court for a lesser sentence for his offenses, describing what he did as "consensual sex with my girlfriend," which prompted the inquiry from the court as to which of the girls he considered his girlfriend. The court's remark was not improper as the testimony presented at trial indicated Mr. Brunelle pursued both victims, and in no way reflects an inability to separate the evidence regarding the two victims.
 {¶ 124} Mr. Brunelle also points to a statement by the trial court at his sexual predator hearing on December 31, 2007, which he claims shows the court was *Page 26 
confused about the evidence. The transcript of that hearing reflects that the trial court considered R.C. 2950.09(B)(3)(j) factor as to whether Mr. Brunelle displayed acts of cruelty or threats during the commission of the offense, and it answered the question in the negative. It stated:
 {¶ 125} "There was no evidence that the Defendant threatened anyone or displayed any acts of cruelty. Certainly evidence was that he repeatedly asked. Even after they repeatedly said no, he continued to ask them to do that until they finally did. Victims indicated they felt threatened to do that. One of them was based on some prior experience that she had had when she was much younger. As a result of that, the Defendant did not — [], there was no evidence that the Defendant had any knowledge of that prior incident, what affect [sic] that would have on her."
 {¶ 126} We fail to see how this analysis of R.C. 2950.09(B)(3)(j) at his sexual predator hearing on December 31, 2007, could have demonstrated a confusion by the trial court when it found him guilty of the offenses against the three victims on November 28, 2007.
 {¶ 127} The trial transcript shows J.A. testified that at the second incident Mr. Brunelle repeatedly asked her to engage in sexual conduct and she felt a strong fear because of prior incidents unrelated to Mr. Brunelle, while B.F.'s testimony does not reflect the repeated requests from Mr. Brunelle. The trial transcript also shows J.A.'s sister testified that when Mr. Brunelle offered her marijuana she declined several times before finally giving in. Therefore, it appears the court was referring to J.A. and her sister when it remarked that: "he repeatedly asked. Even after they repeatedly said no, he continued to ask them to do that until they finally did." *Page 27 
 {¶ 128} As this is a sexual predator hearing, the evidence regarding Mr. Brunelle's offense of corrupting another with drugs involving J.A.'s sister is not pertinent to the court's analysis of whether Mr. Brunelle displayed acts or cruelty or threat in committing the sex offenses. Therefore, the court's inclusion of this evidence in its discussion of the cruelty/threats factor was off the mark; however, it does not demonstrate, as Mr. Brunelle claims, that the court was confused about the evidence regarding the two different victims when it found him guilty of the sex offenses involving J.A. and B.F.
 {¶ 129} For the foregoing reasons, Mr. Brunelle's claim of ineffective assistance of counsel is without merit, because his trial counsel's performance was not deficient in failing to renew the motion for severance at the conclusion of the state's case. His second assignment of error is overruled.
 {¶ 130} Sentencing
 {¶ 131} In his third assignment of error, Mr. Brunelle asserts that the trial court sentenced him unreasonably because the sentence was based on a "mistake of fact."
 {¶ 132} Standard of Review Post-Foster
 {¶ 133} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court of Ohio, in striking down parts of Ohio's sentencing scheme, held that the trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences. Id. at paragraph seven of the syllabus.
 {¶ 134} The full discretion given to the trial court in sentencing inFoster seemingly conflicts with the clear and convincing standard referenced in R.C. 2953.08(G)(2), which *Page 28 
governs appellate review in sentencing matters. As a result, there was confusion among the appellate districts as to the proper of standard of review post-Foster. "Since Foster, the courts of appeals have adopted varied standards for reviewing trial court sentencing decisions, ranging from abuse of discretion, as in the instant case, to a standard that considers whether the sentence is clearly contrary to law." State v.Kalish, 2008-Ohio-4912, ¶ 3.
 {¶ 135} In Kalish, the court clarified the confusion and announced the proper stand of review for felony sentencing after Foster. It held:
 {¶ 136} "In applying Foster to the existing statutes, appellate courts must apply a two-step approach. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." Id. at ¶ 3.
 {¶ 137} The first prong of the analysis instructs that "the appellate court must ensure that the trial court has adhered to all applicable rules and statutes in imposing the sentence. As a purely legal question, this is subject to review only to determine whether it is clearly and convincingly contrary to law, the standard found in R.C. 2953.08(G)." Id. at ¶ 14.
 {¶ 138} The court explained that the applicable statutes to be applied by a trial court include the felony sentencing statutes R.C. 2929.11 and R.C. 2929.12, which are not fact-finding statutes like R.C. 2929.14. Id. at ¶ 17. Therefore, as part of its analysis of whether the sentence is "clearly and convincing contrary to law," an appellate court *Page 29 
must ensure that the trial court considered the purposes and principles of R.C. 2929.11 and the factors listed in R.C. 2929.12.
 {¶ 139} Applying the first prong of the analysis to the underlying case, the court in Kalish concluded that the trial court's sentence was "not clearly and convincingly contrary to law," because (1) the trial court "expressly stated that it considered the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12," (1) it properly applied postrelease control, and (3) the sentence was within the permissible range. Id. at ¶ 18. .
 {¶ 140} If the first prong is satisfied, that is, the sentence is not "clearly and convincingly contrary to law," the appellate court must then engage in the second prong of the analysis, which requires an appellate court to determine whether the trial court abused its discretion in selecting a sentence within the permissible statutory range. Id. at ¶ 17. The court explained the effect of R.C. 2929.11 and2929.12 in this regard:
 {¶ 141} "R.C. 2929.11 and 2929.12 * * * are not fact-finding statutes like R.C. 2929.14. Instead, they serve as an overarching guide for trial judge to consider in fashioning an appropriate sentence. In considering these statutes in light of Foster, the trial court has full discretion to determine whether the sentence satisfies the overriding purpose of Ohio's sentencing structure. Moreover, R.C. 2929.12 explicitly permits trial courts to exercise their discretion in considering whether its sentence complies with the purposes of sentencing. It naturally follows, then, to review the actual term of imprisonment for an abuse of discretion." Kalish at ¶ 17.
 {¶ 142} Applying the second prong of the analysis to the underlying case, the Supreme Court of Ohio noted that the trial court "gave careful and substantial *Page 30 
deliberation to the relevant statutory considerations," and that "there is nothing in the record to suggest the trial court's decision was unreasonable, arbitrary, or unconscionable," Id. at ¶ 20. The court therefore affirmed the defendant's sentence.
 {¶ 143} Here, Mr. Brunelle's sentence for each of his offenses is within the permissible statutory range. Furthermore, the transcript of the sentencing hearing reflects that the court considered the purposes and principles of felony sentencing set forth in R.C. 2929.11 and R.C. 2929.12. Therefore, applying the first step of the Kalish analysis, we find Mr. Brunelle's sentence is not clearly and convincingly contrary to law. As the first prong of Kalish is satisfied, our next step is to review the record to determine if the trial court abused its discretion in sentencing him.
 {¶ 144} Mr. Brunelle concedes his sentence was within the statutory range but complains it was based on an inaccurate representation of the facts "as found true by the trier." He argues the court's statement to him at the sentencing hearing that "[t]he same day you had sex with both of them. Both your girlfriends that day?" indicates a mistake of fact because there is no evidence in the record to suggest he engaged in sexual conduct with both girls on the same day. He argues the court mistakenly believed the record supports such a finding and improperly considered this factor in sentencing him.
 {¶ 145} A review of the sentencing transcript indicates that the court's remark was prompted by Mr. Brunelle's statement that "I stand before you a potential sexual predator for having consensual sex with my girlfriend." Nothing in the record indicates that the court even considered this "fact" in sentencing him. *Page 31 
 {¶ 146} Rather, the record reflects that the court reviewed the presentence report, the psychological evaluation performed by an expert, the victim impact statement, Mr. Brunelle's statement, and his history of criminal convictions, which includes a prior sex offense of similar nature. The record also reflects the court gave careful and substantial deliberation to the relevant statutory considerations. Thus, we find nothing in the record to suggest that the court's decision was unreasonable, arbitrary, or unconscionable in sentencing him. Mr. Brunelle's third assignment of error is overruled.
 {¶ 147} Sexual Predator Labeling
 {¶ 148} In his fourth assignment of error, Mr. Brunelle contends the trial court erred in labeling him as a sexual predator.
 {¶ 149} Former R.C. Chapter 2950, Ohio's first sex offender registration statute, was enacted in 1963. The first major revisions were enacted in 1996 and were referred to as Megan's Law. Effective January 1, 2008, Ohio adopted the Adam Walsh Act, which changed the former law in significant ways.
 {¶ 150} In State v. Johnson, 11th Dist. No. 2008-L-015,2008-Ohio-4666, this court summarized the latest change in Ohio's sexual predator law:
 {¶ 151} "Under former R.C. Chapter 2950, to obtain a sexual predator adjudication, the state had to prove by clear and convincing evidence that the offender had pled guilty to, or had been found guilty of, a sexually oriented offense that was not a registration exempt sexually oriented offense and was `likely to engage in the future in one or more sexually oriented offenses.' Former R.C. 2950.01(E)(1).
 {¶ 152} "On July 27, 2006, President Bush signed into law a bill known as the Adam Walsh Act. The Ohio General Assembly chose to implement the Adam Walsh *Page 32 
Act, and passed Senate Bill 10 in an effort to comply with the federal legislation. On January 1, 2008, Senate Bill 10 of the 127th General Assembly became effective, authorizing the Ohio Attorney General to determine the classification of each offender subject to registration under a three-tiered system. Senate Bill 10 replaced R.C. Chapter 2950, now requiring classification based solely on the offense for which an offender is convicted.[2] A defendant's likelihood to reoffend is no longer considered. See R.C. 2950.01(E), (F), and (G)." Johnson
at ¶ 9-10.
 {¶ 153} Under the new R.C. Chapter 2950, therefore, the designation of "sexual predator" no longer exists, nor do the related hearings under R.C. 2950.09; offenders are now classified on the basis of the offense for which they have been convicted. Johnson, footnote 2.
 {¶ 154} In the instant case, the state contends that Mr. Brunelle was reclassified by operation of law under the new tier structure as a Tier III sex offender. The state contends that even if he were to have been classified as a habitual offender rather than sexual predator in the instant classification hearing, he would now be reclassified under the new law as a Tier III offender based on his prior Tier II conviction. Therefore, his complaint that the court erred by labeling him a sexual predator is moot.
 {¶ 155} We note the record in this case does not contain evidence regarding the Attorney General's formal reclassification of Mr. Brunelle under the new statute. *Page 33 
Therefore, we limit our review to whether the trial court's decision labeling him a sexual predator was proper.[3]
 {¶ 156} An appellate court applies the civil manifest-weight-of-the-evidence standard of review in evaluating a trial court's sexual predator classification. State v. Jackson, Jr., 11th Dist. No. 2006-T-0123, 2007-Ohio-6932, at ¶ 54, citing State v.Reeves, 11th Dist. No. 2006-T-0099, 2007-Ohio-4765, ¶ 13. "Because sex-offender-classification proceedings under R.C. Chapter 2950 are civil in nature, a trial court's determination in a sex-offender-classification hearing must be reviewed under a civil manifest-weight-of-the-evidence standard and may not be disturbed when the judge's findings are supported by some competent, credible evidence." Id., citing Reeves at ¶ 13.
 {¶ 157} Proof by clear and convincing evidence that the offender has been convicted of a sexually oriented offense and that the offender is likely to engage in one or more future sexually oriented offenses is required for an offender to be designated a sexual predator. State v.Clingerman, 11th Dist. No. 2006-T-0031, 2007-Ohio-7113, at ¶ 7; former R.C. 2950.01(E)(1). "Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction *Page 34 
as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 158} "`Further, [w]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct.'"Reeves at ¶ 14, citing Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 79-81. "This presumption arises because the trial judge had an opportunity to view the witnesses and observe their demeanor in weighing the credibility of the witnesses." Reeves at ¶ 14, citingSeasons Coal at 80.
 {¶ 159} Under former R.C. 2950.01(E)(1), a sexual predator is defined as "[a] person [who] has been convicted of or pleaded guilty to committing a sexually oriented offense * * * and is likely to engage in the future in one or more sexually oriented offenses." Furthermore, any "person who is convicted of or pleads guilty to * * * a sexually oriented offense may be classified as a sexual predator." Former R.C. 2950.09(A). Moreover, unlawful sexual conduct with a minor is a sexually oriented offense. R.C. 2950.01(A)(3).
 {¶ 160} Former R.C. 2950.09(B)(3) sets forth factors to be considered by the trial court in making a determination as to whether an offender is a sexual predator. These factors include:
 {¶ 161} "(a) The offender's * * * age;
 {¶ 162} "(b) The offender's * * * prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 163} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made; *Page 35 
 {¶ 164} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 165} "(e) Whether the offender * * * used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 166} "(f) If the offender * * * previously has been convicted of or pleaded guilty to * * * a criminal offense, whether the offender * * * completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender * * * participated in available programs for sexual offenders;
 {¶ 167} "(g) Any mental illness or mental disability of the offender * * *;
 {¶ 168} "(h) The nature of the offender's * * * sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 169} "(i) Whether the offender * * *, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 170} "(j) Any additional behavioral characteristics that contribute to the offender's * * * conduct."
 {¶ 171} In this case, the transcript of the sexual predator hearing reflects the trial court analyzed all the pertinent factors. Regarding factor (a), Mr. Brunelle committed the instant offenses at the age of twenty-six. Regarding factor (b), Mr. Brunelle's prior criminal record shows in 2002 he was convicted of assault, disorderly conduct, and *Page 36 
carrying concealed weapon, and in 2003, unlawful sexual conduct. Subsequent to serving the prison term for the sexual offense, he was convicted of theft and aggravated disorderly conduct.
 {¶ 172} Regarding factor (c), the victims of the sex offenses were fourteen years old and fifteen years old. Regarding factors (d) and (e), the court noted there were two victims but Mr. Brunelle did not use alcohol or drugs to impair the victims. Regarding factor (f), the trial court indicated Mr. Brunelle had previously been convicted of a sex offense. The court also commented that while in prison for that offense, Mr. Brunelle completed a sexual offender's treatment program but considered the program to be "a complete joke" and "gained absolutely nothing out of that."
 {¶ 173} Regarding factor (g), the psychiatric report indicated that Mr. Brunelle suffers from "paraphilia not otherwise specified," "personality disorder not otherwise specified," and narcissistic traits. Regarding factor (h), the trial court found there was a demonstrated pattern of abuse by Mr. Brunelle, who preyed on young teenage girls and engaged in sexual conduct multiple times. The court commented that "[t]his was going on at the same time with two different girls" and that "[a]ll happened within a couple of month period during the summer of 2007." Regarding factor (i), the court noted that Mr. Brunelle displayed no cruelty toward the victims, even though he would repeatedly ask for sex until the victims relented. The court commented that although one of the victims felt threatened, her emotions were due to her prior experience with other individuals and Mr. Brunelle was unaware of the prior incidents or the effect his repeated requests had on her. *Page 37 
 {¶ 174} Regarding factor (j), the court noted the following: the victims were unrelated to Mr. Brunelle; he has a sexual preoccupation and has never been married; he had a prior conviction for the same type of sex offense with the same type of victim, for which he served a prison term; he has a strong interest in minors and displays antisocial behaviors; he was previously labeled a sexually oriented offender and was required to register; testing performed by an expert indicates an almost 50% likelihood of re-offending; and, his attitude indicates that he believes there was nothing wrong with his conduct. Based on its analysis of these factors, the court found Mr. Brunelle to be a sexual predator.
 {¶ 175} Mr. Brunelle argues that the court erred in labeling him a sexual predator because the determination was based on a mistake of fact. He specifically refers us to a statement in the trial court's analysis of his sexual predator classification in its Judgment Entry of Sentence and Sexual Predator, which states: "The defendant's sexual actions were part of demonstrated pattern of abuse in that over a two month period of time defendant engaged in multiple acts of sexual conduct with both of the victims."
 {¶ 176} He argues the court erred in stating that the sexual conducts occurred over a two-month period, because, according to his calculation, the evidence shows the conduct occurred between July 8, 2007 and August 17, 2007, over a period of thirty-seven days instead of over two months.
 {¶ 177} We read the court's statement as referring to the fact that Mr. Brunelle's conduct occurred over the two-month period of July and August, and therefore detect no mistake of fact on the trial court's part. Moreover, even if the court held the allegedly *Page 38 
erroneous belief that he committed the offenses over a sixty-day period rather than a thirty-seven-day period, the alleged mistake could not have prejudiced him, because committing the nine sex offenses in a shorter span of time would make his conduct even more egregious, in the court's analysis of his sexual predator status.
 {¶ 178} Our review indicates the trial court carefully considered all the statutory factors and the record contains competent, credible evidence to support the court's determination that Mr. Brunelle was a sexual predator. Therefore, the court's judgment is not against the manifest weight of the evidence. The fourth assignment of error is overruled.
 {¶ 179} For all the foregoing reasons, the judgments of the Lake County Court of Common Pleas are affirmed.
DIANE V. GRENDELL, P.J., concurs, COLLEEN MARY O'TOOLE, J., concurs in judgment only.
[1] Prior to trial, the parties stipulated to (1) Mr. Brunelle's prior conviction of unlawful sexual conduct with a minor in 2003, (2) his positive test result for Chlamydia and Gonorrhea on September 11, 2007, (3) J.A.'s positive test result for these diseases on August 29, 2007, and (4) B.F.'s negative test result for them on September 11, 2007.
[2] "Under R.C. 2950.032 and R.C. 2950.031, the Attorney General was to determine the new tier classification for each offender at any time after July 1, 2007, and not later than December 1, 2007. A registered letter detailing the offender's new classification and a right to a court hearing to contest the application of the new statute was to be sent to the offender. If the offender failed to request a hearing within sixty days of receipt of the registered letter, the failure constituted a waiver by the offender to a hearing and the offender `[was] bound by the determinations of the attorney general contained in the registered letter sent to the offender * * *.'" Johnson at ¶ 14, citing R.C. 2950.031(E) and R.C. 2950.032(E).
[3] Cf. Johnson, supra (O'Toole, J., dissenting) (the appeal was moot because appellant was reclassified as a Tier III Offender); State v.Luks, 8th Dist. No. No. 89869, 2008-Ohio-3974, ¶ 32 (under S.B. 10 defendant will automatically be reclassified as a "Tier III" offender based solely on the rape offenses he committed and therefore his challenge regarding his sexual predator labeling is moot). *Page 1