OPINION
{¶ 1} This appeal arises from the Lake County Court of Common Pleas, wherein appellant, Ramon Quinones, Sr. ("Quinones"), was found guilty of four counts of gross sexual imposition.
 {¶ 2} The charges in this case arose from allegations of improper sexual contact between Quinones and his nine-year-old granddaughter, "M.," and allegations of sexual conduct and sexual contact with "J.," the eight-year-old daughter of his previous girlfriend. The following facts were presented at trial.
 {¶ 3} During the relevant time period, J. was living with her foster mother, Peggy Howe, in Boardman, Ohio. J. would have periodic visits with her biological mother, Bobbi Jo, who resided in Painesville, Ohio. Bobbi Jo was dating Quinones, and he would periodically stay overnight, including during the times when J. was visiting.
 {¶ 4} Sometime in the Fall of 2000, J., her brother, Billy, and Quinones were staying at Bobbi Jo's house. J. and Billy were watching television in the living room when Quinones entered. Quinones sat down on the couch next to J. and covered her with a blanket. J. testified that Quinones then began fondling her "private part" under the blanket, eventually digitally penetrating her. J. also testified that the following morning she was in the kitchen eating breakfast with Billy, when Quinones came down wearing only pajama pants. She testified that she was standing up and Quinones approached her from behind and rubbed her shoulders.
 {¶ 5} J. also testified that she told Howe of other instances of inappropriate touching. Howe testified that on January 15, 2001, J. awoke at 4:00 a.m. with a nightmare. She came to Howe and told her that Quinones had touched her and tried to digitally penetrate her.
 {¶ 6} The state also presented testimony from Janet Gorsuch, a nurse practitioner with the Tri-County Child Advocacy Center, who examined J. The examination was performed pursuant to a request by Sergeant Troy Hager of the Painesville Police Department. Ms. Gorsuch began explaining to J. why she was conducting the examination, and J. immediately stated that Quinones had touched her private area. Specifically, she told the nurse that Quinones had rubbed his penis against her anal area while she had her clothes on, Quinones had rubbed her "private part" while she was sitting on the couch, and that his penis was sticking out at that time. As a result of the allegations, J.'s visitations with her mother were terminated.
 {¶ 7} Sergeant Hager spoke with Quinones after J.'s allegations were brought forth. Quinones stated he remembered the last time J. and Billy visited but denied any improper touching. He admitted that he liked to tickle the children but never touched J. or Billy in a sexual manner.
 {¶ 8} The second victim, Quinones' granddaughter, M., testified that she was at Quinones' house around Christmas of 1999. She was watching a movie alone in the living room when Quinones came into the room. She testified that, after watching the movie for a few minutes, Quinones began rubbing her thigh and then touched her "private part" between her legs.
 {¶ 9} On another occasion in the Summer of 2000, Quinones drove M. to a neighborhood store to buy candy for her and her brothers. She testified that during the drive Quinones rubbed her thigh and her "private parts."
 {¶ 10} M. eventually told her mother what happened. In addition to these incidents, M. told her mother that Quinones told her that he was going to have sex with M. when she turned ten years old.
 {¶ 11} After M.'s allegations, Quinones was again interviewed by the Painesville Police Department, this time by Detective Robert Sayer. During that conversation, Quinones stated that whenever his grandchildren were around he liked to play with them and tickle them. He stated the touching was playful and never sexual in nature. He said that perhaps he "loved on them too much." Quinones denied telling M. that he was going to have sex with her when she turned ten years old.
 {¶ 12} On September 7, 2001, Quinones was secretly indicted on three counts of gross sexual imposition, third-degree felonies, in violation of R.C. 2907.05(A)(4), and one count of rape, a first-degree felony, in violation of R.C.2907.02(A)(1)(b). Counts one and two, charging gross sexual imposition, pertained to the allegations asserted by M. Counts three and four, charging rape and gross sexual imposition, pertained to J.'s allegations.
 {¶ 13} On March 11, 2002, Quinones filed a motion for a competency determination of both M. and J. Within that motion was a request for an order prohibiting the prosecutor, his agents, advocates, and the parents of the children from rehearsing the children prior to the competency hearings. Quinones also filed a motion seeking relief from prejudicial joinder on that same date, requesting the four-count indictment be severed and two separate trials be ordered.
 {¶ 14} The trial court conducted an in-chambers hearing on both of Quinones' motions. At the conclusion of that hearing, the trial court denied Quinones' motion for relief from prejudicial joinder. The court also found that Quinones raised sufficient issues to require a competency evaluation of J., but that he had not sufficiently met his burden regarding M. Moreover, the trial court denied Quinones' order prohibiting the rehearsal of the witnesses prior to the competency determination. A competency hearing was held for J., at the conclusion of which the trial court determined that J. was competent to testify.
 {¶ 15} On May 20, 2002, the state filed a motion to amend the indictment, requesting that the dates in counts three and four be amended. The trial court granted the motion to amend. Also on May 20, 2002, Quinones filed a motion to reconsider relief from prejudicial joinder. The state filed its response. The trial court denied Quinones' motion on July 8, 2002, basing its decision on the Supreme Court of Ohio's holding in State v.Schaim.[1]
 {¶ 16} On June 20, 2002, Quinones filed a motion to compel amendment of the indictment, or in the alternative, a motion for a bill of particulars. The state filed a bill of particulars on July 3, 2002. On July 22, 2002, Quinones filed a notice of alibi, asserting that he was in Puerto Rico during the times the state alleged the offenses occurred.
 {¶ 17} A jury trial commenced September 30, 2002. After deliberating, the jury found Quinones guilty of the three counts of gross sexual imposition. The jury found Quinones not guilty of rape, but found him guilty of a lesser included offense, to-wit: gross sexual imposition. Sentencing was deferred at that time, and the matter was referred for a presentence investigation and psychological evaluation in contemplation of a sexual-predator-adjudication hearing.
 {¶ 18} On December 16, 2002, the trial court conducted a sexual-predator-adjudication hearing and the sentencing hearing. The state called Dr. John Fabian to testify regarding his psychological evaluation of Quinones. Dr. Fabian concluded that Quinones presented a low to moderate risk of reoffending in the future. The trial court subsequently concluded that it did not find, by clear and convincing evidence, that Quinones was a sexual predator, but it did find that Quinones was a sexually-oriented offender. The court explained to Quinones his reporting duties. At the conclusion of the sexual-predator hearing, the trial court proceeded to sentencing. Quinones was sentenced to three years imprisonment on each of the four counts of gross sexual imposition, to be served concurrently.
 {¶ 19} Quinones subsequently filed this appeal, presenting seven assignments of error:
 {¶ 20} "[1.] The conviction was not supported by sufficient evidence.
 {¶ 21} "[2.] The conviction stands against the manifest weight of the evidence.
 {¶ 22} "[3.] The trial court's conclusion that defendant is a sexually oriented offender is against the manifest weight of the evidence.
 {¶ 23} "[4.] Renewal of motion in opposition to joinder is not required by the Criminal Rules nor does the Ohio Supreme Court or United States Supreme Court hold that renewal is mandatory; therefore a judge-made rule requiring renewal is not mandated under existing law and violates due process as guaranteed by the Fourteenth Amendment to the United States Constitution as well as Article IV Section 5(B) of the Ohio Constitution.
 {¶ 24} "[5.] Assuming arguendo that counsel was properly required to renew defendant's motion for relief from prejudicial joinder, counsel for defendant provided ineffective assistance of counsel when said counsel failed to renew defendant's motion.
 {¶ 25} "[6.] The trial court committed plain error when it denied defendant's motion for relief from prejudicial joinder, because appellant was prejudiced by the joinder.
 {¶ 26} "[7.] It was error for the trial court to apply the `joinder test,' as said test violates defendant's right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution."
 {¶ 27} For the purpose of clarity of analysis, we will address Quinones' assignments of error out of sequential order.
 {¶ 28} We will address Quinones' fourth and fifth assignments of error together. In his fourth assignment of error, Quinones contends that the criminal rules do not require a renewal of a motion in opposition to joinder in order to prevent a waiver of his right to assert the claimed error on appeal. In addition, he asserts that the case law requiring such a renewal is unconstitutional. In his fifth assignment of error, Quinones argues that his trial counsel was ineffective in failing to renew his motion for relief from prejudicial joinder if, in fact, this court determines that renewal was required.
 {¶ 29} In State v. Owens, the Ninth Appellate District held that "[a] motion for severance due to prejudicial misjoinder under rules of procedure for relief from prejudicial misjoinder must be renewed at the close of the state's case or at the conclusion of all the evidence and unless made at that time, it is waived."[2] This court has continuously adhered to that rationale.[3]
 {¶ 30} The transcript in this matter does not indicate whether Quinones' trial counsel renewed the motion after the state's case-in-chief. At the conclusion of the state's case-in-chief, the transcript indicates "[t]he Court and counsel conferred at the bench, out of the hearing of the jury and this reporter." Following the discussion, defense counsel, the assistant prosecutor, and the trial court all generically mentioned the "motions" that had been discussed, but did not identify what the motions were.
 {¶ 31} Since we do not know whether Quinones' trial counsel renewed his motion for relief from prejudicial joinder after the state's case-in-chief, we cannot conclude he was ineffective for failing to do so. In addition, since we are uncertain whether the motion was renewed, and since Quinones raises ineffective assistance of counsel and plain error arguments in relation to this issue, we ultimately address the merits of Quinones' motion for relief from prejudicial joinder. Therefore, in light of our subsequent analysis of Quinones' sixth assignment of error, his fourth assignment of error is moot, because "`"courts decide constitutional issues only when absolutely necessary."'"[4]
 {¶ 32} Quinones' fourth assignment of error is moot, and his fifth assignment of error is without merit.
 {¶ 33} In his sixth assignment of error, Quinones contends that the trial court committed plain error when it denied his motion for relief from prejudicial joinder. In essence, Quinones argues that if renewal of his motion for relief from prejudicial joinder was required and his trial counsel failed to renew it, the trial court committed plain error in denying his motion. As noted, based on the record before us, we are unable to determine whether Quinones did, in fact, renew his motion for relief from prejudicial joinder. However, even if he did not renew the motion, we conclude the trial court's error rises to the level of plain error, therefore, we will address Quinones' argument on this more stringent standard.
 {¶ 34} "Plain error does not exist unless, but for the error, the outcome at trial would have been different."[5] Notice of plain error is to be taken only under exceptional circumstances and only to prevent a manifest miscarriage of justice.[6]
 {¶ 35} Pursuant to Crim.R 8(A), "[t]wo or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character * * *." Generally, joinder of offenses is liberally permitted in order to conserve judicial resources, prevent incongruous results in successive trials, or to diminish inconvenience to witnesses.[7] Thus, the law generally favors joinder of multiple offenses in a single trial.[8]
 {¶ 36} However, pursuant to Crim.R. 14, it may be necessary to require separate trials to prevent prejudice.[9] Crim.R. 14 reads, in pertinent part:
 {¶ 37} "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(A)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."
 {¶ 38} When a defendant claims that joinder is improper, he must affirmatively show that his rights have been prejudiced.[10] The accused must provide the trial court with sufficient information demonstrating that he would be deprived of the right to a fair trial if joinder is permitted.[11]
 {¶ 39} The state may negate the defendant's claim of prejudice by demonstrating either of the following: (1) that the evidence to be introduced relative to one offense would be admissible in the trial on the other, severed offense, pursuant to Evid.R. 404(B); or (2) that, regardless of the admissibility of such evidence, the evidence relating to each charge is simple and direct.[12] The former is generally referred to as the "other acts test," while the latter is known as the "joinder test."[13]
 {¶ 40} In State v. Lott, the Supreme Court of Ohio held that under "the `joinder' test, the state is not required to meet the stricter `other acts' admissibility test, but is merely required to show that evidence of each crime joined at trial is simple and direct."[14] We note the Supreme Court of Ohio continues to follow the "joinder test," as outlined in State v.Lott.[15]
 {¶ 41} In considering whether Quinones was prejudiced by the joinder of charges, the trial court must first determine whether the evidence of the other crime would be admissible, even if the counts were severed.[16]
 {¶ 42} In the instant case, the state presented testimony at trial from both children, as well as Howe, Sergeant Hager, Detective Sayer, and Ms. Gorsuch. Howe, J.'s foster mother, was the state's first witness. Howe testified as to J.'s visitation schedule with her mother during that time and the nightmare incident. J. was the state's second witness. She testified about the incident on the couch where Quinones touched her "private part" and digitally penetrated her.
 {¶ 43} The state then called Sergeant Hager of the Painesville Police Department. He testified that he was assigned to investigate J.'s allegations sometime between January 17 and 19, 2001. He testified regarding his interviews with J. and Quinones, as well as the report he received from nurse practitioner Gorsuch, which indicated "basically the child has suffered some sort of sexual injury to her vaginal lining."
 {¶ 44} M., Quinones' granddaughter, was next to testify. She testified about the incident that occurred around Christmas of 1999 and the car ride incident that occurred on June 30, 2000. On cross-examination, M. admitted to making a complaint against another elderly individual on June 29, 2000, for conduct that occurred on June 26 or 27, 2000. This complaint similarly alleged the other man touched her inappropriately during a car ride.
 {¶ 45} The state then called Detective Sayer to the stand. He was the detective assigned to investigate M.'s allegations. Although he was not working on J.'s case, Detective Sayer testified regarding the statement he took from Quinones and whether Quinones informed him he was out of town during the time period when J. alleged Quinones touched her. The final witness for the state was Nurse Practitioner Gorsuch. She testified about the facts and circumstances surrounding J.'s examination and her subsequent medical conclusions.
 {¶ 46} After the state rested, the defense presented the testimony of Patrolman Eric Miller, who had taken M.'s statement. Miller testified that when he interviewed M. she made no allegations of physical touching by Quinones. The defense then called Ricardo Quinones, Quinones' son, to the stand. He testified regarding Quinones' alibi evidence. Specifically, he had driven Quinones to the airport on September 22, 2000, to embark on a trip to Puerto Rico. He testified that he, himself, left for Puerto Rico on December 18, 2000, and stayed there with Quinones until December 26, 2000, when the two returned together.
 {¶ 47} Looking at the substance and the nature of the testimony presented at trial, we conclude that the trial court erred in not ordering a severing of the indictment and separate trials. According to the joinder test, the court must first determine whether the evidence presented for each offense would be admissible for the other offense, even if the counts were severed. In this case, the answer is clearly no. The evidence regarding the investigation and evaluation of J.'s allegations of abuse, which occurred at a wholly different time period and involved a separate set of circumstances, would not be admissible evidence in relation to M.'s allegations. We also find the reverse to be true. To allow this evidence to be introduced in either trial would be a violation of Evid.R. 404(B) regarding prior bad acts. There is no distinct pattern of abuse or relationship to the offenses that would permit the overlapping of the evidence.
 {¶ 48} The second prong of the joinder test is, if the evidence is not properly admissible for both offenses, whether the evidence itself is simple and direct — meaning the evidence of each offense is so clearly separate and distinct as to prevent the jury from considering evidence of each child's accusations as corroborative of the other.[17] We conclude the answer here is no as well. Once the jury is presented with testimony regarding alleged abuse from one child, as well as that child's foster parent, the investigating officer, and the nurse practitioner who provided the medical examination, the jury is then asked to, in essence, "disregard" all that testimony and start fresh with new allegations of abuse regarding a second child with another investigation.
 {¶ 49} Moreover, we note the allegations of each child are similar in nature. While the evidence is not so similar as to be admissible under Evid.R. 404(B) for proof of motive, plan, or intent, it is not "simple and direct." Both victims were young females. Both children allege that Quinones inappropriately touched them on their "private parts." Both children described an incident that took place on a couch, while watching television or a movie. The jury could readily confuse the evidence regarding J.'s allegations with the evidence suggesting Quinones inappropriately touched M.
 {¶ 50} Also, the presentation of witnesses further mingled the evidence in this matter. Initially, the state presented Howe, J., and Sergeant Hager all in relation to the allegations of abuse of J. Then, the state called M. and Detective Sayer regarding the alleged abuse to M. Thereafter, the state returned to the allegations of abuse to J., by calling Nurse Practitioner Gorsuch. Next, the defense called Patrolman Miller to testify that M. did not mention that Quinones touched her during the interview. Finally, the focus shifted back to J.'s allegations, when the defense called Ricardo Quinones as an alibi witness for the time frame J. alleged Quinones touched her. The continual change of attention from J.'s and M.'s respective allegations against Quinones created an extremely difficult task, at best, for a jury to keep the allegations separate when rendering the verdicts.
 {¶ 51} Finally, the fact that these charges were both sexual in nature weighs against joinder in a single trial.[18] InState v. Schaim, the Supreme Court of Ohio noted that R.C.2907.02(D) and R.C. 2907.05(D), the statutes for rape and gross sexual imposition, respectively, both specifically limit evidence of the defendant's sexual history.[19]
 {¶ 52} The evidence presented to a single jury had a cumulative effect and acted as corroborating evidence for two unrelated allegations of abuse, in violation of Evid.R. 404(B). In addition, the evidence presented by the state was not simple and direct; rather, it tended to blur together, due to the similarity of the allegations. This constituted reversible error, as it prevented the jury from being able to reach separate, distinct conclusions regarding each offense.
 {¶ 53} As noted by Quinones in his brief to this court, the keen observations of Judge Learned Hand regarding the inherent peril in trying multiple crimes together are highly relevant in this case:
 {¶ 54} "There is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively; that is, that, although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all. This possibility violates the doctrine that only direct evidence of the transaction charged will ordinarily be accepted, and that the accused is not to be convicted because of his criminal disposition. Yet in the ordinary affairs of life such a disposition is a convincing factor, and its exclusion is rather because the issue is practically unmanageable than because it is not rationally relevant. When the accused's conduct on several separate occasions can properly be examined in detail, the objection disappears, and the only consideration is whether the trial as a whole may not become too confused for the jury."[20]
 {¶ 55} Therefore, we conclude the trial court committed plain error in denying Quinones' motion for relief from prejudicial joinder.
 {¶ 56} The sixth assignment of error is with merit.
 {¶ 57} In his seventh assignment, Quinones asserts that the trial court erred in applying the "joinder test," in violation of his Fourteenth Amendment due process rights. Quinones argues in his seventh assignment that the "joinder test" is "bad law," as it undermines a defendant's due process rights and misapplies the federal case law upon which it is based. Specifically, Quinones argues that joinder of offenses necessarily involves the admission of prior bad acts in contravention of Evid.R. 404(B).
 {¶ 58} As was the case with Quinones' fourth assignment of error, in light of our analysis of his sixth assignment of error, his seventh assignment of error is moot, because "`"courts decide constitutional issues only when absolutely necessary."'"[21]
 {¶ 59} Quinones' seventh assignment of error is moot.
 {¶ 60} In his first assignment of error, Quinones contends that his conviction of gross sexual imposition, as a lesser included offense of rape, was not supported by sufficient evidence. Should we find merit in Quinones' sufficiency argument, the state would be barred from retrying Quinones on double jeopardy grounds.[22]
 {¶ 61} When determining whether there is sufficient evidence presented to sustain a conviction, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[23]
 {¶ 62} R.C. 2907.05(A) governs the crime of gross sexual imposition, and provides:
 {¶ 63} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 64} "* * *
 {¶ 65} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 66} R.C. 2907.01(B) defines sexual contact as follows:
 {¶ 67} "(B) `Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 68} Quinones contends that J. testified that he only touched her outside her vagina in trying to digitally penetrate her and this act of rape was the only evidence from which the jury could conclude that Quinones had sexual contact with J. Quinones also asserts that since the jury acquitted him of the rape count, it must also have acquitted him of the gross sexual imposition charge. We disagree.
 {¶ 69} The state had to prove beyond a reasonable doubt that Quinones' specific intent in touching J. on proscribed areas of her body was for sexual arousal or gratification of either himself or the victim.[24] It must be determined whether an ordinarily prudent person or a reasonable person sitting as a juror would perceive from Quinones' conduct, and all of the surrounding circumstances, that his purpose was arousal or gratification. Also, gross sexual imposition is a lesser included offense of rape.[25] J. clearly testified that Quinones touched her for his own sexual gratification. Howe also testified regarding the touching that J. described to her. Nurse Gorsuch also testified that J. described Quinones' touching.
 {¶ 70} We conclude that, based on the foregoing, the state provided sufficient evidence for the jury to find beyond a reasonable doubt that Quinones touched J. on the proscribed areas of her body for his own sexual gratification.
 {¶ 71} The first assignment of error is without merit.
 {¶ 72} In his second and third assignments of error, Quinones contends that both his convictions and the sexually-oriented offender adjudication are against the manifest weight of the evidence.
 {¶ 73} As mentioned in our foregoing analysis, the trial court erred in denying Quinones' motion for relief from prejudicial joinder. As such, the matter is to be remanded, and the resulting convictions cannot stand. Similarly, because there are no sexually-oriented convictions upon which the sexually-oriented offender adjudication is based, Quinones' assignment of error relating to that adjudication cannot be addressed by this court at this time.[26] Therefore, based on the foregoing, Quinones second and third assignments of error are moot.
 {¶ 74} We have concluded that Quinones' sixth assignment of error has merit, the second, third, fourth, and seventh assignments of error are moot, and his first and fifth assignments of error are without merit. Thus, based on the foregoing, the judgment of the trial court is reversed, and the cause is remanded for separate trials.
Robert A. Nader, J., Ret., Eleventh Appellate District, sitting by assignment, concurs,
Diane V. Grendell, J., dissents with Dissenting Opinion.
[1] State v. Schaim (1992), 65 Ohio St.3d 51.
[2] State v. Owens (1975), 51 Ohio App.2d 132, at paragraph two of the syllabus.
[3] State v. Cannon (June 30, 1999), 11th Dist. No. 98-L-032, 1999 Ohio App. LEXIS 3057, at *11; State v. Brady (1988),48 Ohio App.3d 41, 44; State v. Daniels (Dec. 23, 1994), 11th Dist. No. 92-T-4730, 1994 Ohio App. LEXIS 5900, at *12-13 (overruled on other grounds).
[4] (Citations omitted.) State ex rel. Mason v. Griffin,104 Ohio St.3d 279, 2004-Ohio-6384, at ¶ 20.
[5] (Citations omitted.) State v. Jenks (1991),61 Ohio St.3d 259, 282.
[6] State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
[7] State v. Torres (1981), 66 Ohio St.2d 340, 343.
[8] State v. Daniels, supra, at *13.
[9] State v. Brinkley, 105 Ohio St.3d 231, 2005-Ohio-1507, at ¶ 29.
[10] See Crim.R. 14; State v. Roberts (1980),62 Ohio St.2d 170, 175.
[11] State v. Lott (1990), 51 Ohio St.3d 160, 163.
[12] State v. Franklin (1992), 62 Ohio St.3d 118, 122.
[13] State v. Lott, supra, at 163.
[14] Id.
[15] State v. Brinkley, 2005-Ohio-1507, at ¶ 30, citingState v. Lott, 51 Ohio St.3d at 163.
[16] State v. Hamblin (1988), 37 Ohio St.3d 153, 159.
[17] See State v. Brinkley, 2005-Ohio-1507, at ¶ 37; Statev. Lott, 51 Ohio St.3d at 164.
[18] See, e.g., State v. Schaim, 65 Ohio St.3d at 60-63.
[19]Id.
[20] U.S. v. Lotsch (C.A.2, 1939), 102 F.2d 35, 36.
[21] (Citations omitted.) State ex rel. Mason v. Griffin,2004-Ohio-6384, at ¶ 20.
[22] State v. Freeman (2000), 138 Ohio App.3d 408, 424, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
[23] State v. Jenks, 61 Ohio St.3d 259, paragraph two of the syllabus.
[24] State v. Mundy (1994), 99 Ohio App.3d 275, 287.
[25] State v. Johnson (1988), 36 Ohio St.3d 224, paragraph one of the syllabus.
[26] R.C. 2950.01(D).