[Cite as *State v. Hefner*, 2026-Ohio-1328.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NOS. 2025-L-056 |
| | 2025-L-057 |
| Plaintiff-Appellee, | |
| | Criminal Appeals from the |
| - vs - | Court of Common Pleas |
| | |
| JENNIFER HEFNER, | |
| | Trial Court Nos. 2022 CR 001358 |
| Defendant-Appellant. | 2023 CR 000497 |

## OPINION AND JUDGMENT ENTRY

Decided: April 13, 2026
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Catherine R. Meehan*, Patituce & Associates, L.L.C., 16855 Foltz Industrial Parkway, Suite 1, Strongsville, OH 44149 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Jennifer Hefner, appeals her convictions for Complicity to Aggravated Burglary, Complicity to Kidnapping, Complicity to Felonious Assault, Burglary, and Having Weapons While Under Disability following a jury trial in the Lake County Court of Common Pleas.

{¶2} Appellant raises four assignments of error, arguing that (1) her convictions were not supported by sufficient evidence; (2) her convictions were against the manifest weight of the evidence; (3) the trial court erred in denying her Crim.R. 29 motion for

acquittal; and (4) she was denied effective assistance of counsel when trial counsel failed to oppose prejudicial joinder of her two cases for trial.

{¶3} Having reviewed the record and the applicable law, we find Appellant's assignments of error to be without merit. First, the State's evidence, if believed, was sufficient to convince the average mind of Appellant's guilt beyond a reasonable doubt. Although much of the evidence regarding Complicity was circumstantial, it had the same probative value as direct evidence. Second, Appellant has not met her burden to affirmatively establish that her convictions are against the manifest weight of the evidence. Instead, Appellant's argument involves the evidence's sufficiency to prove Complicity. Third, Appellant has not established ineffective assistance of counsel. Since the jury was fully capable of segregating the proof in both cases, Appellant was not prejudiced.

{¶4} Therefore, we affirm the judgments of the Lake County Court of Common Pleas.

**Substantive and Procedural History**

{¶5} At all relevant times, Appellant worked as a bartender at the Shamrock Inn in Mentor, Ohio. Patrick O'Neil, Appellant's accomplice, was her close friend whom she told others was her "brother." P.D., the victim, lived in a nearby apartment building and was a regular at the Shamrock. P.D. suffered from several health conditions, was on disability, and was underweight. Mark Payerchin, a material witness, was P.D.'s close friend and often accompanied him to the Shamrock.

{¶6} On the evening of Thursday, November 17, 2022, Appellant was working at the Shamrock when P.D. and Payerchin arrived. Appellant was upset that evening and

was observed drinking several shots of Jack Daniels. To cheer up Appellant, Payerchin left the bar to buy her a bouquet of flowers at a nearby store. Five minutes later, Payerchin returned to the Shamrock and gave the flowers to Appellant. Appellant was still upset, and Payerchin asked her what her favorite color was. Appellant answered, "purple." Payerchin left the bar again and bought Appellant a bouquet of purple flowers.

{¶7} When Payerchin returned about an hour later, Appellant was inebriated to the point of falling down, vomiting, and urinating herself. Payerchin kneeled down to assist Appellant and rubbed her back. An unknown man, who was likely O'Neil, warned Payerchin to keep his hands off Appellant. Brittany Rizzo, another Shamrock bartender, arrived shortly thereafter and took over the bar. P.D. and Payerchin left, and O'Neil and another person took Appellant home.

{¶8} After the incident, Appellant and O'Neil were in regular contact through phone calls and text messages. For instance, the next morning, on Friday, November 18, 2022, O'Neil texted Appellant in all caps, "I HAVE TO TALK TO YOU RIGHT NOW." Later that morning, he texted Appellant and told her that P.D. had given her a "date rape drug" and that she should go the hospital for blood work. In the afternoon, O'Neil texted Appellant and stated, "[Payerchin] drugged you. Go to the hospital." That evening, Appellant and O'Neil had several phone conversations. In some of their texts, O'Neil referred to Appellant as "Bonnie," and Appellant referred to O'Neil as "Clyde."

{¶9} The next day, on Saturday, November 19, 2022, P.D. texted Appellant and invited her and her daughter over to his apartment for dinner. Appellant declined, stating that she was still not feeling well. P.D. responded that he hoped Appellant felt better, that

Case Nos. 2025-L-056, 2025-L-057

he would talk to her another time, and that maybe they could get steak. O'Neil was present while Appellant responded to P.D. and recorded it with his phone.

{¶10} A short time later, Payerchin and Appellant had a phone conversation after trading calls and messages. Among other things, Appellant falsely told Payerchin that she went to the hospital and that "the date rape drug" was found "in [her] body." Payerchin responded, "Well, who in the hell gave that to you?" Appellant stated that she did not know. O'Neil was present during Appellant's conversation and recorded it with his phone.

{¶11} Early the next morning, on Sunday, November 20, 2022, P.D. texted Appellant and asked for a ride to the grocery store later in the day in exchange for groceries. Appellant agreed. Later in the morning, P.D. texted Appellant to say that he no longer wanted to go because of the weather. Appellant responded that she was feeling better and was "looking forward to those steaks." P.D. stated that he was having chest pains and may go to the hospital.

{¶12} At about 10 p.m., Appellant texted and then called P.D., but he did not answer because he was not feeling well. A few minutes later, Appellant knocked on P.D.'s door, and he answered. Appellant told P.D. that she brought over marijuana for them to smoke, which she later admitted was a pretext to question P.D. about her alleged drugging. Appellant left the apartment momentarily to retrieve her phone from her car. Upon returning, she asked P.D. to call Payerchin about the events of November 17, 2022, while she listened. P.D. did so. According to Appellant, Payerchin told P.D., "I told you they were going to blame us" and "You told me there was no cameras in the bar."

{¶13} Meanwhile, O'Neil was standing outside of P.D.'s apartment listening through the door. When the call ended, O'Neil suddenly opened the door and entered

Case Nos. 2025-L-056, 2025-L-057

the apartment. He flipped the couch backwards onto the floor and put his knee on P.D.'s chest. O'Neil then grabbed P.D. by the throat, choked him until his eyes went white, and punched him in the face. Appellant searched through P.D.'s apartment to look for something that may have caused her sickness. She came across a bottle of prescription heartburn pills that belonged to Payerchin. She emptied one of the capsules, crushed the material, mixed it with nasal spray, and forced P.D. to ingest it while O'Neil held P.D.'s neck.

{¶14} Eventually, O'Neil had P.D. move into the kitchen. Appellant searched through P.D.'s cabinets and cupboards. O'Neil picked up a kitchen knife, dragged it across P.D.'s forearm, and said, "You're going to die tonight." O'Neil also made himself a tuna sandwich.

{¶15} At about midnight, Appellant left the apartment to see if Payerchin was at the Shamrock. O'Neil permitted P.D. to smoke a cigarette and drink a beer while P.D. sat on the living room floor. Ten minutes later, Appellant came back. She gave P.D. an ice pack for his eye and "lipped" that she was sorry. O'Neil told P.D. not to call the police or he would "kick [his] a**." After the two-hour ordeal, O'Neil and Appellant left the apartment. Appellant took Payerchin's pills with her, and O'Neil took P.D.'s pellet gun, hunting knife, and Halloween mask.

{¶16} Early the next morning, on November 21, 2022, P.D. sent the following text to Appellant: "I honest to God didn't do or know anything. I would never hurt you. I can't sleep. My f***ing chest is killing me. My eye hurts. Thank you for the ice. If I knew something, Jennifer, I would tell you in a heartbeat."

Case Nos. 2025-L-056, 2025-L-057

{¶17} Appellant later told Brittany Rizzo that she and O'Neil went to P.D.'s house to try to "scare" information out of him and/or Payerchin.

{¶18} Over the next two days, Payerchin became concerned because P.D. did not return his phone calls. On November 22, 2022, Payerchin went to P.D.'s apartment, and P.D. told him about the home invasion. Payerchin observed that P.D. had a black eye and a cut on his arm. Payerchin took P.D. to his mother's house to stay the night.

{¶19} The next day, on November 23, 2022, Payerchin took P.D. to the Mentor Police Department, and they both made reports to Patrolman Huffman. Patrolman Huffman observed bruising around P.D.'s eye and a cut on his forearm. The police took photos of P.D.'s injuries and administered a photo lineup from which P.D. positively identified O'Neil. The police also sent technicians to process P.D.'s apartment for evidence and obtained surveillance video from his apartment building.

{¶20} O'Neil texted Appellant and told her that P.D. "went straight to" Payerchin "just like I knew he would." Appellant responded, "I'm going to take care of the rest of that. Thanks for all your help. I appreciate it. I got it from here."

{¶21} P.D. went to the emergency room at Lake West hospital in Willoughby, and he reported pain in his ribs and injuries to his face and eye. He was diagnosed with a fractured cheekbone, a rib contusion, contusions to the eyelid and cheekbone, and a broken blood vessel in his eye.

{¶22} Meanwhile, the police went to the Shamrock, where they located and arrested O'Neil. They searched O'Neil's residence, which was located in a building behind the Shamrock, and recovered P.D.'s pellet gun and hunting knife.

Case Nos. 2025-L-056, 2025-L-057

{¶23} Patrolman Epling went to Appellant's residence. Appellant told him that she was drugged at the Shamrock on November 17, 2022, but that she did not go to the hospital. She also stated that she went to P.D.'s house on November 20, 2022, because he invited her over for dinner and that she had P.D. call Payerchin about her alleged drugging. She denied that O'Neil was also present or that she took Payerchin's pills from the apartment. Patrolman Epling drove Appellant to the station for questioning.

{¶24} Detective Butler read Appellant her Miranda rights, and he and Detective Vernick questioned her. Appellant admitted that she went to P.D.'s apartment on November 20, 2022, and that she took Payerchin's pills when she left. She initially denied O'Neil's involvement. Upon further questioning, however, she conceded that O'Neil was present and that he punched P.D. in the face. According to Appellant, O'Neil wanted to make sure that P.D. did not hurt her and that Payerchin was not present. She told him not to enter unless something happened, and O'Neil remained outside until he heard Payerchin's statements on the phone. Following the interview, the police took Appellant to her residence, where she retrieved Payerchin's pills and gave them to the police.

{¶25} A few days later, P.D. found the kitchen knife that O'Neil had used to cut him and reported it to the police. The Lake County Crime Laboratory analyzed the knife; however, the analysts did not discover testable fingerprints or blood, and they were not able to determine whether the knife handle contained O'Neil's DNA.

{¶26} On April 11, 2023, the Lake County Grand Jury indicted Appellant on eight counts in case no. 2022-CR-001358 ("the 2022 case"): two counts of Complicity to Aggravated Burglary, first-degree felonies in violation of R.C. 2923.03(A)(2) (Counts 1 and 2); Burglary, a second-degree felony in violation of R.C. 2911.12(A)(1) (Count 3); two

counts of Complicity to Kidnapping, first-degree felonies in violation of R.C. 2923.03(A)(2) (Counts 4 and 5); two counts of Complicity to Felonious Assault, first-degree felonies in violation of R.C. 2923.03(A)(2) (Counts 6 and 7); and Theft of Drugs, a fourth-degree felony in violation of R.C. 2913.02(A)(1) (Count 8).[1]

{¶27} On April 25, 2023, the Mentor Police Department was notified that Appellant's vehicle was traveling in the area and that a warrant had been issued for her arrest. Patrolmen Hendrickson and Province located Appellant's vehicle, initiated a traffic stop, and took Appellant into custody. Upon inquiry, Appellant told Patrolman Province that there was a firearm in her vehicle. Patrolman Province retrieved the firearm, removed the bullets, and placed them in separate locations in the vehicle. Patrolman Province was then informed that Appellant was not legally permitted to possess the firearm due to the nature of the charges in the indictment. Therefore, Patrolman Hendrickson retrieved and took custody of the firearm.

{¶28} On April 27, 2023, Appellant waived her right to be present at her arraignment in the 2022 case and entered not guilty pleas.

{¶29} On June 16, 2023, the Lake County Grand Jury indicted Appellant on three counts in case no. 2023-CR-000497 ("the 2023 case"): Having Weapons While Under Disability, a third-degree felony in violation of R.C. 2923.13(A)(2) (Count 9); Improperly Handling Firearms in a Motor Vehicle, a fourth-degree felony in violation of R.C. 2923.16(B) (Count 10); and Carrying Concealed Weapons, a fourth-degree felony in violation of R.C. 2923.12(A)(2) (Count 11).

---

1. O'Neil was also indicted. He was later convicted of several charges and sentenced to an aggregate prison term of 11 to 16.5 years. We affirmed his convictions in *State v. O'Neil*, 2024-Ohio-512 (11th Dist.).

Case Nos. 2025-L-056, 2025-L-057

{¶30} On June 30, 2023, Appellant waived her right to be present at her arraignment in the 2023 case and entered not guilty pleas.

{¶31} On July 12, 2023, the State filed an unopposed motion for joinder of trials. On July 20, 2023, the trial court granted the motion.

{¶32} The cases were tried to a jury from September 5 through 8, 2023. The State presented testimony from the investigating officers from the Mentor Police Department; P.D.; Payerchin; Dr. Zavarella from Lake County Crime Laboratory; Anastasia Colonna-Danielson, a bartender at the Shamrock; Dr. Pokersnik from Lake West hospital; Alyssa Duncan, a regular at the Shamrock; and Rizzo. As exhibits, the State presented photographs of P.D.'s injuries and his apartment; aerial photographs of P.D.'s apartment and the Shamrock; a short video taken at the Shamrock on November 17, 2022; body camera footage from Patrolman Epling; call logs from P.D.'s phone; video of Appellant's police interview; surveillance video from outside of P.D.'s apartment; contents from O'Neil's phone; and photographs of O'Neil's residence.

{¶33} Following the State's case-in-chief, Appellant moved for acquittal pursuant to Crim.R. 29(A), which the trial court denied.

{¶34} Appellant presented testimony from her stepfather and a friend.

{¶35} Following the presentation of evidence, Appellant renewed her Crim.R. 29(A) motion for acquittal, which the trial court again denied.

{¶36} On September 11, 2023, the jury returned guilty verdicts on all counts, except Count 2 (Complicity to Aggravated Burglary) and Count 6 (Complicity to Felonious Assault), upon which the jury returned not-guilty verdicts.

{¶37} On November 27, 2023, the trial court held a sentencing hearing. In the 2022 case, the trial court merged Count 7 (Complicity to Felonious Assault) into Count 1 (Complicity to Aggravated Burglary) and Count 5 into Count 4 (both Complicity to Kidnapping). The trial court sentenced Appellant to a prison term of 3 to 4.5 years on each of Counts 1, 3, and 4 and 18 months on Count 8, to be served concurrently, for an aggregate prison term of 3 to 4.5 years.

{¶38} In the 2023 case, the trial court merged both Count 10 (Improperly Handling Firearms in a Motor Vehicle) and Count 11 (Carrying Concealed Weapons) into Count 9 (Having Weapons While Under Disability). The trial court sentenced Appellant to a prison term of nine months to be served concurrently to the prison term in the 2022 case.

{¶39} On November 29, 2023, the trial court filed Appellant's judgments of conviction.

{¶40} On May 23, 2025, Appellant, through counsel, filed motions for delayed appeals. On June 16, 2025, this Court granted Appellant's motions and consolidated the appeals.

{¶41} Appellant raises four assignments of error.

### Sufficiency of the Evidence

{¶42} We review Appellant's first and third assignments of error together.

{¶43} Appellant's first assignment of error states: "APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE."

{¶44} Appellant's third assignment of error states: "THE TRIAL COURT ERRED IN DENYING APPELLANT'S RULE 29 MOTION FOR ACQUITTAL."

{¶45} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 2004-Ohio-6688, ¶ 18 (11th Dist.).

{¶46} "'"Sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 1997-Ohio-52, ¶ 23, quoting *Black's Law Dictionary* (6th Ed. 1990). "In essence, sufficiency is a test of adequacy." *Id*. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

{¶47} Appellant argues that the evidence was insufficient for her convictions for Complicity to Aggravated Burglary (Count 1), Complicity to Kidnapping (Counts 4 and 5), Complicity to Felonious Assault (Count 7), Burglary (Count 3), and Having Weapons While Under Disability (Count 9). We consider each charge in turn.

***Complicity to Aggravated Burglary***

{¶48} In Count 1, Appellant was convicted of Complicity in violation of R.C. 2923.03(A)(2) for aiding or abetting O'Neil's commission of Aggravated Burglary in violation of R.C. 2911.11(A)(1).

{¶49} With respect to Complicity, R.C. 2923.03(A)(2) provides, in relevant part, that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall . . . *[a]id or abet* another in committing the offense[.]" (Emphasis added.)

{¶50} The statute does not define "aid or abet." The Supreme Court of Ohio has held that "to aid or abet is '"[t]o assist or facilitate the commission of a crime, or to promote its accomplishment."'" *State v. McFarland*, 2020-Ohio-3343, ¶ 28, quoting *State v. Johnson*, 2001-Ohio-1336, ¶ 17, quoting *Black's Law Dictionary* (7th Ed. 1999). "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *Johnson* at syllabus. "'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *Id*. at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist. 1971). By contrast, "the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." *Id*. at 243, quoting *State v. Widner*, 69 Ohio St.2d 267, 269 (1982). According to the Supreme Court, "[t]his rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission." *Id*.

{¶51} With respect to Aggravated Burglary, R.C. 2911.11(A)(1) provides, in relevant part:

(A) No person, by force, stealth, or deception, shall *trespass* in an occupied structure . . . when another person other than an accomplice of the offender is present, with purpose to commit in the structure . . . any criminal offense, if any of the following apply:

(1) The offender inflicts, or attempts or threatens to inflict *physical harm* on another[.]

(Emphasis added.)

{¶52} "Trespass" is defined as, "without privilege to do so, . . . *[k]nowingly* enter[ing] or remain[ing] on the land or premises of another[.]" (Emphasis added.) R.C. 2911.21(A)(1). *See* R.C. 2911.10 (the trespass element of Aggravated Burglary is the offense of Criminal Trespass).

{¶53} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶54} "Physical harm to persons" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶55} Appellant argues that there was insufficient evidence to prove that she aided or abetted O'Neil's trespass because there was no evidence indicating that she "asked or told Mr. O'Neil to lie in wait," "instructed him at any point to enter the residence," or "aid[ed] Mr. O'Neil in his entry into P.D.'s residence."

{¶56} We find that the State presented sufficient evidence to support the jury's finding that Appellant knowingly supported, assisted, encouraged, cooperated with,

Case Nos. 2025-L-056, 2025-L-057

advised, and/ or incited O'Neil's trespass into P.D.'s apartment. Specifically, we note the following evidence:

(1) O'Neil's phone records indicate that he and Appellant were in regular contact after the incident at the Shamrock, during Appellant's phone communication with P.D. and Payerchin, and before and after O'Neil's and Appellant's home invasion at P.D.'s apartment.

(2) P.D. testified that Appellant's arrival at his apartment was unexpected because he had cancelled his prior dinner invitation.

(3) Appellant admitted to police that she offered to smoke marijuana with P.D. as a pretext to enter his apartment and obtain information about her alleged drugging.

(4) Appellant's statements to police and the surveillance video show that Appellant planned and was fully aware of O'Neil's presence outside of P.D.'s apartment.

(5) P.D. testified that when O'Neil trespassed, Appellant did not appear "shocked" or "nervous" by his presence; rather, she appeared to be "on a mission" to search P.D.'s house.

(6) After the home invasion, Appellant told Rizzo that she and O'Neil had planned to go to P.D.'s apartment together to "scare" information out of him and/or Payerchin.

{¶57} Even though much of this evidence is circumstantial, the Supreme Court of Ohio has held that direct and circumstantial evidence inherently possess the same probative value, even when used to prove essential elements of an offense. *See Jenks*, 61 Ohio St.3d at 272.

{¶58} Appellant next argues that she did not "know or assist in [O'Neil's] attempt or infliction of physical harm." We disagree. Appellant told the police that O'Neil punched P.D. in the face and that she gave P.D. an ice pack. P.D. testified that Appellant forced him to ingest a concoction of Payerchin's pills and nasal spray. Based on Appellant's knowledge of, and active participation in, P.D.'s assault, the State presented sufficient

evidence to support a finding that Appellant supported, assisted, encouraged, and/or cooperated with O'Neil in inflicting physical harm on P.D. Accordingly, the evidence was sufficient to find Appellant guilty of Complicity to Aggravated Burglary.

### *Complicity to Kidnapping*

{¶59} In Count 4, Appellant was convicted of Complicity in violation of R.C. 2923.03(A)(2) for aiding or abetting O'Neil's commission of Kidnapping in violation of R.C. 2905.01(A)(3).

{¶60} Complicity is defined above. With respect to Kidnapping, R.C. 2905.01(A)(3) provides, in relevant part, that "[n]o person, by force, threat, or deception, . . . shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes . . . [t]o terrorize, or to inflict serious physical harm on the victim or another[.]"

{¶61} Appellant argues that there was insufficient evidence to prove that she aided or abetted O'Neil's commission of Kidnapping; rather, she only "search[ed] through [P.D.'s] drawers and cabinets for medication that belonged to [Payerchin] while Mr. O'Neil restrained [P.D.]"

{¶62} In addition to the evidence summarized above, O'Neil's restraint of and threats against P.D. facilitated Appellant's search of P.D.'s apartment and theft of Payerchin's pills. Therefore, the State presented sufficient evidence to support the jury's finding that Appellant supported, assisted, encouraged, cooperated with, advised, and/or incited O'Neil's commission of Kidnapping. Accordingly, the evidence was sufficient to find Appellant guilty of Complicity to Kidnapping.

Case Nos. 2025-L-056, 2025-L-057

{¶63} In Count 5, Appellant was found guilty of Complicity in violation of R.C. 2923.03(A)(2) for aiding or abetting O'Neil's commission of Kidnapping in violation of R.C. 2905.01(B)(2).

{¶64} As stated, Count 5 merged into Count 4 at sentencing, and Appellant was sentenced on Count 4. This Court has held that "[w]hen counts in an indictment are allied offenses and there is sufficient evidence to support the offense on which the [S]tate elects to have the defendant sentenced, the appellate court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless." *State v. Mugrage*, 2021-Ohio-4136, ¶ 133 (11th Dist.). Since we have determined that there was sufficient evidence to support Appellant's conviction on Count 4, any error regarding Count 5 would be harmless.

### Complicity to Felonious Assault

{¶65} In Count 7, the jury found Appellant guilty of Complicity in violation of R.C. 2923.03(A)(2) for aiding or abetting O'Neil's commission of Felonious Assault in violation of R.C. 2903.11(A)(1).

{¶66} As stated, Count 7 merged into Count 1 (Complicity to Aggravated Burglary) at sentencing, and Appellant was sentenced on Count 1. Since we have determined that there was sufficient evidence to support Appellant's conviction on Count 1, any error regarding Count 7 would be harmless. *See Mugrage* at ¶ 133.

### Burglary

{¶67} In Count 3, Appellant was convicted of Burglary in violation of R.C. 2911.12(A)(1).

{¶68} R.C. 2911.12(A)(1) provides, in relevant part, that "[n]o person, by force, stealth, or deception, shall . . . *[t]respass* in an occupied structure . . . when another person other than an accomplice of the offender is present, with *purpose* to commit in the structure . . . any criminal offense[.]" (Emphasis added.)

{¶69} Trespass is defined above. With respect to purpose, "A person acts purposely when it is the person's specific intention to cause a certain result, or, *when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature*." (Emphasis added.) R.C. 2901.22(A).

{¶70} Appellant argues that the evidence was insufficient to prove that she trespassed by "force, stealth, or deception"; rather, P.D. invited her over for dinner. In addition, even though Appellant left momentarily to get her phone, P.D. testified that Appellant was still welcome in his home.

{¶71} Appellant's summary of the evidence is incomplete. The evidence indicates that while P.D. had invited Appellant over for dinner, he later rescinded that invitation because he was not feeling well; therefore, he was not expecting Appellant to arrive at his home. In addition, Appellant admitted that she offered to smoke marijuana with P.D. as a pretext to enter his apartment and obtain information about her alleged drugging. Therefore, Appellant used deception to gain entry into P.D.'s home. While P.D. testified that he initially permitted Appellant's presence in his home, he also testified that Appellant was no longer so permitted after O'Neil trespassed. The definition of "trespass" includes to "*remain* on the land or premises of another . . . without privilege to do so * * *."

Case Nos. 2025-L-056, 2025-L-057

(Emphasis added.) R.C. 2911.21(A)(1). Therefore, the State presented sufficient evidence to support a finding that Appellant trespassed by deception.

{¶72} Alternatively, Appellant argues that the evidence was insufficient to prove that her purpose in trespassing was to commit a criminal offense. She contends that her police interview indicates that her purpose was to get answers about her alleged drugging.

{¶73} While Appellant's ultimate goal may have been to obtain information, a reasonable jury could have inferred that Appellant intended to commit one or more criminal offenses to achieve that goal. For instance, Rizzo testified that Appellant and O'Neil had planned to go to P.D.'s apartment together to "scare" information out of P.D. and/or Payerchin. Appellant and O'Neil succeeded in scaring P.D., and they committed multiple criminal offenses in the process. Therefore, the State presented sufficient evidence to support a finding that Appellant's purpose in trespassing was to commit a criminal offense. Accordingly, the evidence was sufficient to find Appellant guilty of Burglary.

### Having Weapons While Under Disability

{¶74} In Count 9, Appellant was convicted of Having Weapons While Under Disability in violation of R.C. 2923.13(A)(2).

{¶75} R.C. 2923.13(A)(2) provides, in relevant part, that "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if . . . [t]he person is under indictment for or has been convicted of any felony offense of violence . . . ."

{¶76} Appellant argues that R.C. 2923.13(A)(2) does not specify the mental state for being "under indictment"; therefore, pursuant to R.C. 2901.21(B) and the Supreme Court of Ohio's decision in *State v. Clay*, 2008-Ohio-6325, recklessness applies, and the State failed to prove that she was reckless.

{¶77} Appellant's argument fails to acknowledge the Supreme Court of Ohio's subsequent decision in *State v. Johnson*, 2010-Ohio-6301, in which the Court took "a fresh look" at the issue. *Id*. at ¶ 40. In *Johnson*, the defendant was charged with Having Weapons While Under Disability pursuant to R.C. 2923.13(A)(3). *Id*. at ¶ 41. That statute provides, in relevant part:

> Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if . . . [t]he person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse . . . .

{¶78} The Supreme Court held as follows:

> In defining the offense, the General Assembly chose to specify a culpable mental state for the element of possession of a weapon, but it did not assign an additional mens rea for the additional elements of being under indictment or having been convicted. Because R.C. 2923.13(A), which is part of the definition of the offense, already contains the mens rea of "knowingly," R.C. 2901.21(B) does not apply. We therefore need not determine whether there is a plain indication of purpose to impose strict liability for these additional elements. Furthermore, because R.C. 2901.21(B) does not apply, there is no statutory provision that allows us to insert the mens rea recklessness into the statute. As a result, for the offense of having weapons while under disability defined by R.C. 2923.13(A)(3), the [S]tate is not required to prove a culpable mental state for the element that a defendant is under indictment for or has been convicted of any offense involving a drug of abuse.

*Id*. at ¶ 42.

{¶79} Although *Johnson* involved R.C. 2923.13(A)(3), the same analysis applies to R.C. 2923.13(A)(2). Therefore, the State was not required to prove recklessness.

Case Nos. 2025-L-056, 2025-L-057

{¶80} In sum, the evidence was sufficient to prove Appellant's convictions. Accordingly, Appellant's first and third assignments of error are without merit.

**Manifest Weight of the Evidence**

{¶81} Appellant's second assignment of error states: "APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶82} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the [S]tate's or the defendant's?" *Id*. In considering whether a conviction is against the manifest weight of the evidence, "'[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 1997-Ohio-52, ¶ 24, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id*., quoting *Martin* at 175.

{¶83} Appellant argues that her convictions for Complicity to Aggravated Burglary (Count 1), Complicity to Kidnapping (Counts 4 and 5), and Complicity to Felonious Assault (Count 7) are against the manifest weight of the evidence. Due to merger, however, Appellant was not "convicted" of Counts 5 and 7. *See State v. Whitfield*, 2010-Ohio-2, ¶ 12 (a conviction requires both a guilty verdict and a sentence). Therefore, we limit our review to Counts 1 and 4.

Case Nos. 2025-L-056, 2025-L-057

{¶84} Appellant contends that the record is "devoid" of any evidence establishing that she aided or abetted O'Neil's commission of Aggravated Burglary and Kidnapping; rather, the evidence only indicates that she was present at P.D.'s house when O'Neil committed them. For instance, Appellant states that the phone records only "suggest[ed]" that she and O'Neil "frequently communicated with one another."

{¶85} Appellant's argument challenges the sufficiency of the evidence to establish Complicity, which we have rejected above. Since Appellant has not asserted a proper manifest-weight challenge, she has not met her burden to affirmatively demonstrate that her convictions are against the manifest weight of the evidence.

{¶86} Accordingly, Appellant's second assignment of error is without merit.

**Ineffective Assistance of Counsel**

{¶87} Appellant's fourth assignment of error states: "APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION WHEN TRIAL COUNSEL FAILED TO OPPOSE PREJUDICIAL JOINDER OF TWO CASES FOR TRIAL."

{¶88} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Specifically, "the defendant must show that counsel's representation fell below an objective standard of reasonableness . . . considering all the circumstances." *Id*. at 688.

Case Nos. 2025-L-056, 2025-L-057

"Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

{¶89} Appellant argues that trial counsel's performance was deficient because he failed to object to the prejudicial joinder of the 2022 and 2023 cases.

{¶90} "'The law favors joining multiple criminal offenses in a single trial.'" *State v. Gordon*, 2018-Ohio-259, ¶ 18, quoting *State v. Franklin*, 62 Ohio St.3d 118, 122 (1991). "This is because joint trials 'conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.'" *Id*., quoting *Bruton v. United States*, 391 U.S. 123, 134 (1968). Pursuant to Crim.R. 13, "[t]he court may order two or more indictments or informations or both to be tried together, if the offenses . . . could have been joined in a single indictment or information." Crim.R. 8(A) provides the standards for determining whether separate offenses can be charged in the same indictment:

> Two or more offenses may be charged in the same indictment . . . if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

{¶91} "[E]ven if indictments are initially correctly joined under Crim.R. 8(A) and 13, a trial court should order separate trials pursuant to Crim.R. 14 if it appears the defendant is prejudiced by the joinder." *Gordon* at ¶ 20. Crim.R. 14 provides, in relevant part:

If it appears that a defendant or the [S]tate is prejudiced by a joinder of offenses . . . in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts . . . or provide such other relief as justice requires.

{¶92} "It is the defendant's burden to demonstrate that joinder is prejudicial." *Gordon*, 2018-Ohio-259, at ¶ 21. Since Appellant never objected to the joiner and did not seek severance pursuant to Crim.R. 14, we review the trial court's joinder decision only for plain error. *See id*. at ¶ 21-22.

{¶93} To establish plain error, a defendant must show a deviation from a legal rule that constitutes an obvious defect in the trial proceedings and show that the error affected the outcome of the trial. *State v. Rogers*, 2015-Ohio-2459, ¶ 22. To have affected the outcome of the trial, a defendant must demonstrate "a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis deleted.) *Id*. "Notice of plain error . . . is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶94} "When a defendant claims that joinder is improper, he must affirmatively show that his rights have been prejudiced." *State v. Quinones*, 2005-Ohio-6576, ¶ 38 (11th Dist.). In other words, "[t]he accused must provide the trial court with sufficient information demonstrating that he would be deprived of the right to a fair trial if joinder is permitted." *Id*.

The [S]tate may negate the defendant's claim of prejudice by demonstrating either of the following: (1) that the evidence to be introduced relative to one offense would be admissible in the trial on the other, severed offense,

Case Nos. 2025-L-056, 2025-L-057

pursuant to Evid.R. 404(B); or (2) that, regardless of the admissibility of such evidence, the evidence relating to each charge is simple and direct.

*Id*. at ¶ 39.

{¶95} "Evidence is considered simple and direct when 'the jury is believed capable of segregating the proof on each charge.'" *State v. Little*, 2023-Ohio-4098, ¶ 79 (11th Dist.), quoting *State v. Roberts*, 62 Ohio St.2d 170, 175 (1980). "The former is generally referred to as the 'other acts test,' while the latter is known as the 'joinder test.'" *Quinones* at ¶ 39, quoting *State v. Lott*, 51 Ohio St.3d 160, 163 (1990).

{¶96} Appellant contends that the other-acts test is not met. However, since Appellant did not seek severance, the trial court had no occasion to conduct an other-acts analysis. We decline to do so for the first time on appeal since the record indicates that the less stringent joinder test is satisfied.

{¶97} Here, the cases involved different dates, locations, and actions, and the State elicited the testimony supporting the cases from separate witnesses. *See, e.g., Little* at ¶ 79; *State v. Pate*, 2020-Ohio-4190, ¶ 11 (11th Dist.). In addition, the State presented the two cases in chronological order. *See, e.g., Pate* at ¶ 11. Therefore, the jury was fully capable of segregating the proof in both cases. Since Appellant has not established prejudicial joinder, she necessarily has not established ineffective assistance of counsel.

Case Nos. 2025-L-056, 2025-L-057

{¶98} Accordingly, Appellant's fourth assignment of error is without merit.

{¶99} For the foregoing reasons, the judgments of the Lake County Court of Common Pleas are affirmed.


EUGENE A. LUCCI, J.,

ROBERT J. PATTON, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this Court, Appellant's assignments of error are without merit.  It is the judgment and order of this Court that the judgments of the Lake County Court of Common Pleas are affirmed.

Costs to be taxed against Appellant.

JUDGE JOHN J. EKLUND

JUDGE EUGENE A. LUCCI,
concurs

JUDGE ROBERT J. PATTON,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case Nos. 2025-L-056, 2025-L-057